Argued October 16, reversed and suit dismissed December 9, 1919.

## WILSON v. PRETTYMAN.

(185 Pac. 587.)

**Logs and Logging—Evidence of Misrepresentation of Contents of Bill of Sale of Timber.**

1. In suit to restrain defendant from cutting and removing standing timber from plaintiffs' lands under a bill of sale, evidence *held* insufficient to show any misrepresentation by defendant as to the contents of the instrument which she induced plaintiffs to sign.

**Contracts—Seal as Presumptive Evidence of Consideration.**

2. By Section 776, L. O. L., the seal on a bill of sale was primary evidence of consideration.

**Logs and Logging—Evidence Showing Consideration for Sale of Timber.**

3. In suit to restrain defendant from cutting and removing standing timber from plaintiff's lands under bill of sale, evidence *held* to sustain finding that the sole consideration moving from defendant for the transfer of the timber was her agreement to build a house and barn on her property adjoining plaintiffs' farm, thus increasing values in neighborhood.

**Contracts—Pleading Failure of Consideration.**

4. Total failure of consideration for an agreement, and the facts constituting such failure, must be pleaded, or evidence thereof cannot be considered.

**Evidence—Parol Evidence Admissible on Issue of Consideration.**

5. Testimony of conversations in regard to timber sold, had prior to execution of the bill of sale, may be considered only to determine the actual consideration for the transfer of the timber, and not to vary the terms of the written bill of sale.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

This is a suit which is brought to restrain the defendant from cutting and removing standing timber from the lands of plaintiff. The complaint avers that upon a tract of land described therein, there is a large body of trees and timber suitable for cordwood; that since September 1, 1917, defendant has wrongfully and unlawfully entered upon plaintiff's land and with employees has been cutting such timber into cordwood, and has thereby damaged plaintiff's estate to the extent of $500. The prayer is for $500, as damages, and for a restraining order against further trespass. Defendant filed an answer and cross-complaint, wherein after some admissions and denials, there is set up a written contract as follows:

"Portland, Ore., 8–23–16.

"Know All Men by These Presents, That we, Clarence True Wilson and Maud A. Wilson, of the County of Multnomah, State of Oregon, the parties of the first part, for and in consideration of the sum of $1.00 to us in hand paid by E. E. Prettyman, of the County of Multnomah, State of Oregon, the party of the second part, the receipt whereof is hereby acknowledged, do by these presents grant, bargain, sell and convey unto the said party of the second part, her executors, administrators and assigns, the following described property: All of the saw or merchantable timber for lumber now on my place or farm of 83 acres, more or less, located near Gresham, Oregon, with the exception of the cedar timber, which is to be divided as follows: One-fourth of the cedar timber to the party of the second part and three-fourths to the parties of the first part. Also we do hereby bargain, sell and convey to the party of the second part the first heifer calf born from Kate or Wilson's Pet, said calf to be one week

old and in good condition at the time it is turned over to the party of the second part.

"To have and to hold the same to the party of the second part, her executors, administrators and assigns forever. And we do ourselves, and for our heirs, executors, administrators and assigns covenant and agree to warrant and defend the sale of all the above property to the party of the second part, her executors, administrators and assigns against all and every person and persons whomsoever lawfully claiming or to claim same.

"In witness whereof, we have hereunto set our hands and seals this 23rd day of August, 1916.

"(Signed)   CLARENCE TRUE WILSON.   (Seal)
"(Signed)   MAUDE A. WILSON.         (Seal)
"Witnesses:
    "HAZEL WHITCOMB."

It is alleged that the timber mentioned in this contract is the timber referred to in the complaint. It is further stated that plaintiff, without the consent or knowledge of defendant has cut about all of the cedar timber and appropriated it to his own use, and refuses to account to defendant therefor; that plaintiff refuses to permit defendant to cut or remove any of the timber so sold to her although she has frequently made demand therefor, and that she is informed and believes and therefore alleges that plaintiff and his wife have placed large mortgages on the property thus sold to the defendant and refuses to have the same released therefrom, or to allow the defendant to enter and remove the property so purchased. It is then alleged that defendant paid to plaintiff the sum of $1,500, as the purchase price of such property, and the prayer asks for judgment in that amount.

Replying to the cross-complaint, plaintiff admits the execution of the contract as alleged, but avers that there was no consideration therefor, and explains the

transaction by alleging that prior to the execution of such contract, plaintiff and defendant had agreed to an exchange of real properties, wherein he was to receive a house and lot in Portland, in exchange for certain acreage which adjoined his farm; that defendant informed him that she intended to improve the tract of land so received from him, by erecting thereon a house and barn, and that she would like to get from the plaintiff a few trees from his farm, to have manufactured into lumber for such buildings; that thereupon plaintiff told her that she might have a few trees from his farm for that purpose, and that she might also have one fourth of the cedar timber on said farm for posts. It is then alleged:

"That based upon said conversation and agreement between the parties the defendant herein prepared the contract set out in her answer and cross-complaint, and the plaintiff signed the same, upon the statement and representation of the defendant that said contract was in accordance with this agreement as to such timber and said calf, without reading the same; that said contract as alleged does not state the agreement between the parties; that there was no consideration whatsoever for the execution thereof, and that the same was so drawn by the defendant for the sole purpose of cheating and defrauding the plaintiff herein."

It is then alleged that plaintiff has cut the cedar timber, and has often notified defendant that she may go upon the premises and remove one fourth thereof upon payment of one fourth of the cost of cutting. This affirmative matter is denied by defendant in a reply. There are some allegations in the pleadings regarding the heifer calf mentioned in the contract, but as that element has been eliminated by the parties, it need not be considered. There was a trial and a decree which reads thus:

"It is therefore considered, ordered and adjudged, that the defendant herein may have one-fourth share of the cedar posts cut on the premises of plaintiff upon payment to plaintiff by defendant of the one-fourth cost of cutting the same; that defendant may have the eight or ten logs cut on said premises of plaintiff, but said cedar and said logs must be removed from the premises of the plaintiff by the defendant within thirty days from the date hereof and be so removed under the supervision of and upon notice to the plaintiff, and plaintiff have the injunction prayed for in the complaint and judgment against the defendant for his costs and disbursements herein taxed at the sum of $ ——."

From this decree defendant appeals.

REVERSED.   SUIT DISMISSED.

For appellant there was a brief and an oral argument by *Mr. W. J. Makelim.*

For respondent there was a brief over the name of *Messrs. Wheelock & Williams,* with an oral argument by *Mr. A. E. Wheelock.*

BENSON, J.—1. The substantial issues in this case are to be found in the defendant's cross-complaint and the reply thereto. The defendant relies entirely upon the terms of the bill of sale for her right to enter upon plaintiff's lands to cut and remove the standing timber. Plaintiff's reply admits the execution of this contract by himself and wife, but alleges that it was signed by them, without reading it, relying upon defendant's representation that it was framed in accordance with their prior agreement, and that there was no consideration for its execution, and that the instrument was so framed by defendant for the purpose of cheating and defrauding the plaintiff.

The plaintiff and his wife both testify that the bill of sale was read to them by the defendant before its execution, and that they were also furnished with a carbon copy thereof. They also testify that when it was read to them, Mrs. Wilson said to her husband: "Are you going to sign that?" And when he assured her that he was, she reluctantly joined in its execution. Upon his cross-examination, Dr. Wilson testified as follows:

"Q. What did she say?

"A. She read it; she didn't say anything; she read it. All of the merchantable timber for lumber and Kate's calf. * *

"Q. That is all it said, isn't it?

"A. Yes, and Kate's heifer calf provided it is taken within seven days. Then on the strength of that I signed it.

"Q. That is all it said. What is the difference between what you have just related and what it says in the contract—

"A. The contract is all right and what I say is all right; they agree entirely."

We must therefore dismiss from our consideration any question of misrepresentation as to the contents of the instrument.

2. This brings us to consider the question as to whether or not there was a consideration. The contract itself recites a nominal consideration of one dollar. It is also to be noted that the agreement is a sealed instrument, and such seal is primary evidence of a consideration: Section 776, L. O. L. The testimony of the defendant is to the effect that the transfer of the property described in the writing was simply part of a larger transaction, wherein she exchanged a house and lot in the City of Portland for 40 acres of land adjoining plaintiff's farm, and the personal property which is the subject of this litigation. She also says,

that in the larger deal, she valued this personal property at about $1,500. Upon the other hand, the plaintiff contends that the first conversation in which the transfer of the timber was mentioned occurred some weeks after every detail of the real estate transaction had been agreed upon, and at a time when that exchange was simply awaiting the preparation of the necessary conveyance. He says that it happened thus: That upon an occasion when the defendant was riding with him and his wife, in their automobile, Miss Prettyman asked him if there was any timber on her land, meaning the 40-acre tract which she had agreed to accept from him, in exchange for her house and lot in Portland. She said that she wished to build a house and barn thereon, to be occupied by her brother-in-law. Dr. Wilson replied:

"I don't think there is a tree, but I said, if you will do that, if you will build a house, I will give you all the timber that you can use in the building of your house and barn, and, 'I said, there isn't anything but punk up there, except eight or nine trees, maybe six or eight trees, I don't know."

Mrs. Wilson corroborates her husband in this, saying:

"And then, coming in, in the machine, that day, Miss Prettyman was asking about whether there was any— if there was any timber on her place. Dr. Wilson told her no, but we had a good many—several good trees on our place, and if she would build a house and barn that she was welcome to go and take all the saw and merchantable timber to build her house and barn with— she could take off our place. He says: 'You can take it all as far as I am concerned, but I am quite sure there are between eight and nine, maybe ten good trees that can be used for that purpose.' "

Upon cross-examination, Mrs. Wilson explains further:

"We were giving it to her so she would improve the neighborhood and thought it would increase the value of our place."

3, 4. Upon this evidence, the trial court made a finding to the effect that the sole consideration for the transfer of the timber agreement upon the part of the defendant was to build a house and barn upon her property adjoining plaintiff's farm, and this finding meets with our approval. However, the trial court went further, and held that since the defendant has not built any house and barn on the premises, there is a total failure of the consideration. We cannot agree with this conclusion for two reasons: First, there is no allegation in either of plaintiff's pleadings touching a failure of consideration, or that the house and barn have not been built, and no doctrine is better settled than that a total failure of consideration, and the facts constituting such failure must be pleaded, or evidence thereof cannot be considered: 13 C. J. 742, and cases there cited. Second, it is difficult to see how the defendant could be expected to erect the buildings from the timber described in the contract, before it has been severed from the soil and removed to the mill.

5. It must not be overlooked that we have considered testimony of conversations in regard to the timber, which were had prior to the execution of the bill of sale, for the sole purpose of determining the actual consideration for the transfer of the property, and not for the purpose of varying the terms of a written contract.

It appears from the evidence, that the seven trees already cut by the defendant are all merchantable timber suitable for lumber, and she is entitled to remove them. Whether or not there are additional trees of the same character upon the premises, we are unable

to say; but if there are, they belong to the defendant, and she has a right to cut and remove them, but is not entitled to any other kind. As regards the cedar timber, it appears that the plaintiff has cut practically all of it, and manufactured it into fence posts, one fourth of which belong to the defendant, upon payment by her of one fourth of the cost of such manufacture.

The possible failure of the defendant to perform her part of the contract, by building the house and barn upon her 40-acre tract, presents a question which can only be presented in some proper proceeding when such default has been properly established. It is not now before us.

A decree will be entered dismissing the suit without prejudice, neither party to recover costs in either court.                 REVERSED. SUIT DISMISSED.

McBRIDE, C. J., and BURNETT and BENNETT, JJ., concur.