Argued October 28, 1974, reversed and remanded January 7, 1975

# PENDLETON GRAIN GROWERS, *Respondent, v.* PEDRO, *Appellant.*

530 P2d 85

*Wade P. Bettis, Jr.,* Canby, argued the cause for appellant. With him on the briefs were Bettis & Reif, Canby; and Arthur R. Barrows, Pendleton.

*Lawrence B. Rew* of Corey, Byler & Rew, Pendleton, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and HOLMAN, TONGUE, HOWELL, BRYSON and SLOPER, Justices.

BRYSON, J.

Plaintiff brought this action to recover damages for defendant's alleged breach of contract to sell and deliver wheat. After both parties rested, plaintiff moved for a directed verdict in favor of plaintiff. The court allowed the motion and directed the jury that the contract was valid, that plaintiff had been damaged, and then instructed on the issue of damages. The jury returned a verdict in favor of plaintiff in the amount of $5,000, on which judgment was entered. The defendant appeals.

Plaintiff alleged:

"* * * * *.

### "II.

"On May 7, 1973, at Pendleton, Oregon, Defendant contracted to sell to Plaintiff 6,000 bushels of white wheat at $2.53 per bushel, number One delivered Coast, the same to be delivered on or before August 31, 1973.

### "III.

"The Defendant, through August 31, 1973 delivered only 969 bushels of wheat to Plaintiff.

"* * * * *";

and that plaintiff was damaged in the sum of $9,650.

To these allegations defendant filed a general denial. Defendant's principal assignment of error is that the trial court erred in not admitting defendant's testimony as to the terms of and non-existence of the contract.

Defendant made an extended offer of proof to show the non-existence of an agreement: (1) that the parties did not agree on price; (2) that defendant did not accept the terms of the form contract (including place of delivery); and (3) that defendant did not agree to the contract to sell wheat when plaintiff refused to make a requested $500 cash advance.

The offer of proof and colloquy of court and counsel can be summarized by the following:

"THE COURT: Well, that isn't going to make any difference if he signs a contract in blank and then the blank spaces are filled in and then he receives the contract; that isn't going to show that there is no contract.

"MR. BARROWS: We are going one step farther and show that he didn't receive it—I mean he didn't accept it.

"The evidence is going to show here that they discussed this, but when Mr. Ganger wrote it down, he didn't write it correctly, it was given back to him and disaffirmed or whatever you want to call it, and there was never any agreement on it.

"\* \* \* \* \*

"MR. BARROWS: \* \* \*[W]e are claiming that there was never a contract and we are entitled to show there was never a contract. That's an exception of the parol evidence rule. Certainly just the fact that there is a written contract doesn't shut off all evidence concerning how it was entered into.

"\* \* \* \* \*

"THE COURT: I'm going to sustain an objec-

tion to any evidence that will attempt to vary any information that is contained in Exhibit 1 [contract]; and whether you attempt to do it by saying there is no contract or to show that that was not the price or that was not the quantity of bushels of wheat that was to be delivered, or that the contract was signed in blank and then filled in and then Mr. Pedro took the contract and left the office. I am going to sustain objections to any testimony along that line, Mr. Barrows, because we have here an executed contract, Exhibit 1, Mr. Pedro has acknowledged that it's his signature."

The form contract used by plaintiff for future deliveries of wheat provided:

"PENDLETON GRAIN GROWERS, INC.
Pendleton, Oregon

TO: Joe V. Pedro      CONTRACT NO. 240

DATE    5/7/73

We confirm our PURCHASE from you today of:

QUANTITY   6,000 Bu—360,000#

COMMODITY  White Wheat

PRICE  $2.53—#1 L.T.

BASIS  Delv. Coast

DELIVERY  August 1973

SUBJECT TO  State Grades—Elevator wts
* * * * *.

Unless other specified, Portland or Seattle Merchants Exchange Rules and schedules of dockage and discounts to govern. It is understood that this confirmation and its acceptance without notifying

us of error herein, is acknowledgment of contract as above.

ACCEPTED

PENDLETOÑ GRAIN GROWERS, INC.

<u>/s/ Jos. V. Pedro</u>  <u>/s/ Wm. Ganger"</u>

The plaintiff contends that (1) "in order to raise the question of the invalidity of a contract it must be the subject of an affirmative defense"; and (2) "[t]he basic rule of contracts is that if the evidence of the alleged contract is all contained in writings then it is the duty of the court to determine if there is a contract and the terms of the contract."

■ In support of its proposition that the invalidity of a contract must be raised by affirmative defense, plaintiff relies on *Wilson v. Prettyman,* 94 Or 275, 282, 185 P 587 (1919) and *Bowl-Opp, Inc. v. Bayer,* 255 Or 318, 322, 458 P2d 435 (1970). Both of these cases are inapplicable to the case at bar. In *Wilson v. Prettyman, supra,* the defense was failure of consideration, and in *Bowl-Opp, Inc. v. Bayer, supra,* the defendant contended there was duress, which we held must be affirmatively pleaded. In *Elston v. Wagner et al,* 216 Or 386, 390, 337 P2d 326 (1959), we stated that "evidence which controverts facts necessary to be proved by plaintiff may be shown under a general denial." *Brown v. Jones,* 137 Or 520, 523, 3 P2d 768 (1931). See also 17A CJS Contracts § 549b. Plaintiff has the burden to establish the existence of a valid contract and the breach thereof. It follows, therefore, that defendant may introduce evidence to controvert the existence of such a contract under a general denial.

As to plaintiff's contention that it is the duty of

the court to determine if there is a contract and the terms of the contract, defendant relies upon *Wagner v. Rainier Mfg. Co.,* 230 Or 531, 537, 371 P2d 74 (1962). We do not believe the rule in *Wagner* is as broad or all-encompassing as contended by plaintiff. In *Wagner* the question was whether the exchange of letters constituted a contract and an acceptance of the terms of the contract. We held:

> "The trial judge submitted the question of contract *vel non* [or not] to the jury. This, we think, was error, for the rule in this state is that where the evidence of the alleged contract is all contained in letters or other writings, it is the province of the court to construe them and see if they constitute a contract. * * *" (Citations omitted.) 230 Or at 537.

The case at bar does not involve the formation and acceptance of a contract by the exchange of letters.

█ Here the defendant contends that the contract was not as agreed and that there was "no contract." The trial court, in ruling on defendant's offer of proof, stated, "I'm going to sustain an objection to any evidence that will attempt to vary any information that is contained in [the contract]." We think the court erred in this respect. The defendant was entitled to introduce the evidence shown in his offer of proof. In *Story v. Hamaker,* 245 Or 584, 586, 423 P2d 185 (1967), we stated:

> "* * * Plaintiffs contend that the realtor's testimony upon which the court's decision appears primarily to have been based was inadmissible under ORS 41.740, the parol-evidence rule. The statute itself provides that the bar against the admission of parol evidence to vary a writing is not applicable 'where the validity of the agreement is the fact in dispute.' * * *"

The defendant also assigns as error the trial court's instructions to the jury on the issue of damages, which defendant excepted to at the time of trial.

The court's sole instruction was as follows:

> "The measure of damages for non-delivery by a seller is the difference between the market price at the time when the buyer learned of the breach which in this case would be August 7, 1973, and contract price. The damages in this case cannot exceed the sum of $9,659.50."

ORS 72.7130 provides:

> "(1) Subject to the provisions of ORS 72.7230 with respect to proof of market price, the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in ORS 72.-7150, *but less expenses saved in consequence of the seller's breach.*
>
> "* * * * *." (Emphasis added.)

■ There was evidence in this case of expenses incurred by the seller for handling the grain in and out of the warehouse and possibly for taxes. No instruction was given on these subjects. Because this case will have to be retried, we feel that the jury should be fully instructed on the provisions of the Uniform Commercial Code, ORS 72.7130 and 72.7230. *See Melms v. Mitchell,* 266 Or 208, 223, 512 P2d 1336 (1973); 2 Anderson, Uniform Commercial Code §§ 2-713, 2-723 and 2-724 (2d ed 1971).①

Reversed and remanded for a new trial.

---

① An excellent case for a discussion of the issue of damages resulting from a seller's non-delivery of goods under the UCC is Harbor Hill Litho. Corp. v. Dittler Bros., Inc., 76 Misc 2d 145, 348 NYS2d 920, 922 (1973).