Bebtbam Habkett, J.
Harbor Hill Lithographing Corp. (Harbor Hill), by written contract dated October 26, 1972, agreed to buy 500,000 brochures from Dittler Brothers, Inc. (Dittler) at a stated price. These brochures were color advertisements for special skills reading material distributed by Barnell Loft, Ltd., a customer of Harbor Hill.
Dittler was obligated to print and deliver the brochures according to specified terms, but, when it did not, Harbor Hill rejected the brochures finally tendered and sued for damages resulting from the claimed breach of contract. Dittler in turn counterclaimed itself for breach of contract. A trial was held resulting in jury findings that Dittler had breached the contract, and Harbor Hill had not, and a verdict of $14,650 in consequential out-of-pocket damages for Harbor Hill. The only remaining issue, submitted upon agreement of the parties to the court for determination after the jury verdict, is whether Harbor Hill is also entitled to recover the claimed unrealized profits in its transaction with Barnell, lost as a result of Dittler’s contract breach.
To begin with, we observe that the burden of proof in establishing damages from lost profits is upon the plaintiff, Harbor Hill. (Buyer v. Mercury Tech. Cloth & Felt Corp., 301 N. Y. 74.)
Section 2-713 of the Uniform Commercial Code provides for basically three categories of damages recoverable for a seller’s *146 breach of contract by nondelivery of goods, or repudiation of the agreement.
One is the difference between market and contract prices. However, here, there was no proof submitted by plaintiff to establish the market value of the brochures. There was no evidence that a market did or did not exist for these items. No expert or operative familiar with market conditions or availability testified. No comparative prices or comparable brochure printing were elicted.
The testimony regarding Harbor Hill’s-agreement to resell the brochures at a stated price is merely indicative of one transaction, perhaps above then current market prices, perhaps below, and, in the absence of verifying evidence of its being accurately reflective of the market price, is not sufficient to establish this measure of damage. It is true that where no current market price is available, evidence of spot sale prices is proper; and, the price of scarce goods may be shown by opinion as to value. (See Uniform Commercial Code, § 2-713, Official Comment, point 3.) But, here, there was not -a scintilla of evidence evincing absence of market price information or product scarcity. (See Perlman v. Israel & Sons Co., 306 N. Y. 254.)
Accordingly, plaintiff has not proven its entitlement to the first type of ‘ ‘ market price less contract price ’ ’ damages. (Booth v. Spuyten Duyvil Rolling Mill Co., 60 N. Y. 487; see, Czarnikow-Rionda Co. v. Federal Sugar Refining Co., 255 N. Y. 33.)
The second damage variety, incidental -as defined in subdivision (1) of section 2-715 of the Uniform Commercial Code, or the reasonable out-of-pocket costs to plaintiff, less any amounts received for partial delivery of brochures, was assessed by the jury at $14,650.
The final sort of damages, consequential, in pertinent part, is defined in section 2-715 ,(subd. [2], par. [a]) of the Uniform Commercial Code to include: ‘ ‘ any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise ”,
It appears conceded that Harbor Hill’s resale contract was not sufficiently flexible in performance deadline to allow it to prevent loss reasonably ‘ ‘ by cover or otherwise ”. The question then becomes whether Dittler ‘1 had reason to know ’ ’ of Harbor Hill’s arrangement with Barnell. We find that it did.
Point 6 of the Official Comment (McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, § 2-715) *147 specifically states: “ In the case of sale of wares to one in the business of reselling them, resale is one of the requirements of which the seller has reason to know within the meaning of subsection (2)(a).”
Here, Harbor Hill was known to be in the business of reselling printed materials, generally, and in particular, the printed brochures ordered from Dittler. There was particular testimony that Harbor Hill was under delivery pressure from the resale customer and so communicated to Dittler. The particular brochures were advertisements heralding as “ NEW from Barnell Loft ” the specific skills series of booklets. The name, address, and telephone number of Barnell appeared on each flyer. It is inconceivable that Dittler was unaware of the likely resale of this material and certainly had reason to know that, since the product was so individualized, it was intended to be resold to the entity who was the subject of the advertisement. The brochures were obviously of no value to anyone but Barnell, its agents or representatives.
Here, while there was no evidence that Dittler knew the precise extent of contemplated profits in Harbor Hill’s resale arrangement with Barnell (cf. Traynor v. Walters, 10 UCC Rep. 965), the possibility, if not probability, of anticipated profit from resale was reasonably within the contemplation of the parties. (Gurney Ind. v. St. Paul Fire & Marine Ins. Co., 11 UCC Rep. 261.) (See Neville Chem. Co. v. Union Carbide Corp., 5 UCC 1219.) Harbor Hill might have contracted to resell at cost or even a loss, but that possibility is of no avail to Dittler who, being apprised of the resale of a product it contracted to deliver, is then responsible for whatever, if any, damage was caused in fact. (See Gzarnikow-Rionda Co. v. Federal Sugar Refining Co., 255 N. Y. 33, supra; Gulf Chem. & Metallurgical Corp. v. Sylvan Chem. Corp., 12 UCC Rep. 117.) There has been no showing that the price to Barnell or the net profits are extravagant. (Cf. Booth v. Spuzten Dusvil Rolling Mill Co., 60 N. Y. 487, supra.)
The over-all philosophy of the Uniform Commercial Code is to put the aggrieved party ‘ ‘ in ,as good a position as if the other party had fully performed ” within the specific statutory remedies provided. (Uniform Commercial Code, § 1-106, subd. [1].) Harbor Hill did not breach the contract, but Dittler did; but for that breach, Harbor Hill would have had the brochures for Barnell and reasonably cleared its contract price less its own added expenses and the cost of Dittler’s printing. Dittler appears to rely mainly upon pre-Uniform Commercial Code precedent which may have been more stringent in awarding lost *148 profits, only where the “ special circumstance ” of resale and its particulars were known in advance to the defaulting seller. (See, e.g., Tracton v. A & O Novelties Co., 32 Misc 2d 991.) However, the code and commentary, effective in New York since 1964, m,ake quite clear that resale circumstances put the seller on notice of potential exposure to liability for lost resale profits. There was ample proof that Dittler “ had reason to know” of Harbor Hill’s particular requirements in the obtaining and resale of the Barnell brochures.
The computation of lost profits is straightforward. There was competent proof that Harbor Hill’s .agreement with Barnell entailed a total purchase price of $48,120 and that its expenses for fulfilling its part of the contract would have been $24,505 (contract price with defendant) plus $14,650 (jury incidental damage award) for a total of $39,155, leaving then a net profit, lost, of $8,965. (Chapman v. Fargo, 223 N. Y. 32; see 13 N. Y. Jur., Damages, § 116.)
However, Harbor Hill is not entitled to recover lost profits resulting from the loss of the entire Barnell account, claimed as a result of this brochure embroglio. That kind of an open-ended measure is far too speculative to warrant assessing the defaulting seller for it. (See Kaplan v. Blitzblau, 20 A D 2d 601.)
Submit judgment on notice incorporating plaintiff’s damages as these lost profits and the jury verdict for plaintiff of $14,650, and the damages to defendant of $17,390.06 stipulated by the parties before trial as arising under another unrelated transaction, leaving a net amount due plaintiff of $6,224.94.