**HILORD CHEMICAL CORPORATION, Plaintiff–Appellee–Cross–Appellant,**

v.

**RICOH ELECTRONICS, INC., Defendant–Appellant–Cross–Appellee.**

**Nos. 706, 818, Dockets 88–7789, 88–7830.**

United States Court of Appeals, Second Circuit.

Argued March 3, 1989.
Decided May 15, 1989.

Jay F. Gordon, New York City (David Jacoby, Stuart L. Melnick, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, of counsel), for plaintiff-appellee-cross-appellant.

James P. Donovan, New York City (Anne Marie Persky, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, of counsel), for defendant-appellant-cross-appellee.

Before PIERCE and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

ALTIMARI, Circuit Judge:

Defendant-appellant Ricoh Electronics, Inc. ("REI") appeals from a judgment entered in the United States District Court for the Eastern District of New York (Wexler, J.), awarding plaintiff-appellee Hilord Chemical Corp. ("Hilord") contract damages in the amount of $960,498. In conjunction with its appeal from the judgment, REI seeks review of the court's denial of several of its trial and post-trial motions. Hilord cross-appeals from the denial of its post-trial motion for prejudgment interest. Hilord commenced the underlying action for breach of an oral distributorship agreement. REI moved for summary judgment on the ground that the oral agreement was unenforceable under the New York Statute of Frauds, N.Y.U.C.C. § 2–201(1). Its motion was denied. REI also requested and was denied a jury instruction that in order to obtain consequential damages, Hilord was required to seek a covering contract pursuant to § 2–715. After trial, REI moved under Fed.R.Civ.P. 50 for judgment notwithstanding the verdict or, in the alternative, a new trial under Rule 59. Subsequent to the entry of the money judgment Hilord moved under Rule 60 for prejudgment interest. The post-trial motions of both parties were denied. For the reasons set forth below, we affirm the denial of

---

* Honorable Robert J. Kelleher, United States District Court for the Central District of California, sitting by designation.

REI's motions for summary judgment and j.n.o.v. However, we vacate the judgment in the amount of $960,498, and remand for a new trial on the issue of damages. In light of this disposition, we vacate the order denying Hilord's motion for prejudgment interest.

## BACKGROUND

In order to understand the instant dispute, some background information will be necessary. REI is a California corporation owned by parent Ricoh Co., Ltd. ("Ricoh"), a Japanese firm. REI manufactures liquid transfer toner products specifically formulated for use in certain photocopiers which are made by Ricoh, but sold in the United States by Savin Corporation as the Savin 700 and 800 series copiers. At the time of the instant dispute, Savin 700/800 series copiers were the largest group of photocopiers sold in the United States.

The manufacturing contract between Ricoh and Savin contains an exclusivity agreement under which Ricoh—and by extension, REI—may sell 700/800 series liquid toner only to Savin. Savin, however, is not prevented by the agreement from purchasing its toner from other suppliers. At the time the instant dispute arose, approximately 30% of the 700/800 series toner directly supplied to Savin was sold by REI. Two other firms, the Phillip A. Hunt Chemical Co. ("Hunt") and the Synfax Co. ("Synfax"), supplied an additional 50%. The remaining 20% of Savin 700/800 toner was not supplied directly to Savin. Instead, retailers sold finished toner dispersant packs in the "aftermarket" to photocopy machine users.

In 1985, REI's direct sales of toner products to Savin began to decline. In order to recapture some of its sales, REI sought to make an end run around the Ricoh–Savin exclusivity agreement. REI's strategy was to pretend to act as a "subcontractor" for aftermarket suppliers. Aftermarket retailers would secretly be supplied by REI with toner concentrate and product specifications. The retailers would formulate finished toner dispersant packs according to the supplied specifications, then sell the products in consumer quantities under private label. In order not to jeopardize the Savin–Ricoh manufacturing agreement, it was important that Savin not find out about REI's plan.

Hilord is a Hauppauge, New York company which manufactures and distributes toner dispersant packs in the photocopy aftermarket. Hilord has developed liquid toners for many types of copiers, including some Savin models. Prior to the instant dispute, however, Hilord had been unable to develop a commercially successful toner for use in Savin 700 and 800 series machines. Because it could not develop a product for the 700/800 series machines, Hilord could only sell Savin toner for use in older model copiers. In August 1985 Eric Louie, REI's sales and marketing manager, telephoned Terry Sickle, a Hilord salesman and an old friend. Louie asked Terry Sickle if Hilord would be interested in selling REI's 700/800 series liquid toner. After conferring with Paul Sickle, Hilord's president, Terry Sickle responded that Hilord would be "very interested" in such an arrangement.

From August through early October 1985, REI and Hilord discussed the arrangement under which REI would supply Hilord with bulk quantities of toner concentrate for Savin 700/800, and Landa series copiers. The parties held a meeting at Hilord's Long Island plant on October 16, 1985. At the meeting, according to Paul Sickle, Eric Louie promised to make Hilord REI's primary United States distributor of Savin toner products. Hilord would be supplied with all the concentrate it required for as long as REI continued to manufacture it. The price for concentrate would be $11.00 and $14.50 per gallon for the 700/800 and Landa series copiers, respectively. In addition, REI would provide Ricoh's product specifications, plus safety and quality control data. Freight terms were to be F.O.B. REI's California plant, and billing was to be net 30 days. Hilord was to execute a confidentiality agreement regarding the existence and terms of the arrangement. At the close of the meeting,

Eric Louie shook hands with the Sickles, saying "[w]e have a deal."

Although Hilord executed its confidentiality agreement, no written contract for the distributorship agreement was ever signed by the parties. However, the terms arrived at during the October 16 meeting were documented in a series of letters and memoranda between the companies. Four documents in particular are important. A letter from Eric Louie to Terry Sickle on November 6, 1985 recited key terms of the agreement, including Hilord's "projected first year requirements" of 19,800 gallons of toner concentrate, price, freight, and billing. At a second meeting on November 20, 1985, Terry Sickle handed Eric Louie a document captioned "Agreement Between Hilord Chemical and Ricoh." The document stated, *inter alia*, "Hilord will purchase [liquid transfer toner] concentrate from Ricoh.... Ricoh will supply Hilord with all necessary technical information."

In addition, an internal memorandum dated December 3, 1985 alerted REI's production department that Hilord would be ordering 1,584 gallons of concentrate each month for 12 months, beginning January 1986. Finally, on December 30, 1985 Paul Sickle sent a letter to REI referring to Louie's "assurances that [the parties] had an agreement" to distribute liquid toner. The letter complained about REI's failure to perform its end of the agreement.

At some point between October 16 and December 30, 1985, Savin discovered REI's scheme to divert toner concentrate to aftermarket suppliers. In order to protect its manufacturing agreement with Savin, Ricoh scuttled REI's plan. REI did not inform Hilord of this development until sometime after December 30. Meanwhile, Hilord had discontinued research and development of its own Savin 700/800 series toner. It had begun preparing advertisements for its private label product, and ordered finished 700/800 series toner dispersant packs from its competitors for study. It had also purchased a small supply of REI concentrate for use in making customer samples. However, its efforts to create customer samples was thwarted by

REI's failure to send quality control data on the concentrate.

Hilord commenced the underlying action in the district court on January 21, 1987, alleging that REI had breached the oral agreement reached at the October 16 meeting. In its answer, REI denied the existence of a contract. It asserted as an affirmative defense Hilord's failure to mitigate its damages as required by N.Y.U.C.C. § 2–715. Shortly before trial, REI moved for summary judgment on grounds that even if an agreement had been made, enforcement of the agreement was barred by the New York Statute of Frauds, N.Y. U.C.C. § 2–201(1). The court held decision on the motion in abeyance until after trial.

At trial, Hilord introduced the letters and memoranda sent between the parties, as well as the testimony of Paul and Terry Sickle, as evidence that an oral contract had been made. REI's defense mainly consisted of trying to elicit admissions from the Sickles that negotiations on the purported deal continued well after the October 16 meeting, in an attempt to show that no agreement had ever been reached. Both parties presented the testimony of economists on the disputed issue of damages for lost profits. REI attempted to prove through its expert witness that Hilord had no experience selling 700/800 series toner, and that its projections of profits were speculative.

Anticipating REI's affirmative defense, Paul Sickle testified on direct examination that he was unaware of sources other than REI from which he could obtain toner concentrate. Terry Sickle testified, however, that he met with a Savin purchasing agent prior to the October 16 meeting, and was told that Savin obtained toners from Hunt and Synfax in addition to REI. Evidence was adduced that Hunt and Synfax together supplied 50% of Savin's toner. Terry Sickle also testified that the Hunt and Synfax products were "acceptable" for use in 700/800 series copiers.

A Savin consultant was deposed, and testified that Synfax was able to sell its products to customers other than Savin. He testified in addition that although Hunt at

one time had an agreement with Savin similar to Ricoh's exclusivity agreement, Hunt had obtained permission from Savin to sell its toner to other firms. REI presented as a witness Charles Case, a former vice-president and general manager of Hunt Chemical Corp. In response to the question whether a company could obtain concentrate for the purpose of private labeling, Case replied "I'd be certainly sure that Hunt or Synfax would entertain that today, yes." On cross examination Paul Sickle was asked "[d]id you actually order or attempt to order any LTT [liquid transfer toner] from Hunt or Synfax?" Sickle responded "No."

At the close of plaintiff's case, REI moved for dismissal on grounds that Hilord had not established a *prima facie* case as to the existence of a contract. The court reserved decision on the motion. At the close of the trial REI asked to submit a jury instruction on the issue of mitigation of damages. The court denied the request without explanation. The court also decided REI's motion for summary judgment, which it had earlier reserved. The court found that certain documents in evidence satisfied the merchant's confirmatory writing exception to the Statute of Frauds, N.Y.U.C.C. § 2–201(2). Accordingly, the court denied REI's summary judgment motion. The court did not, however, revisit REI's motion for dismissal submitted at the end of plaintiff's case, nor did REI renew the motion. On May 19, 1988, the jury rendered its verdict in favor of Hilord, in the amount of $960,498. The judgment was entered the following day.

Both parties submitted post-trial motions challenging aspects of the judgment. REI moved for judgment notwithstanding the verdict under Rule 50(b) or, in the, alternative, a new trial under Rule 59. It contended, *inter alia*, that there was insufficient evidence to support the award of damages, and that Hilord's failure to mitigate its losses precluded its recovery of damages as a matter of law. The court denied REI's motions without explanation in its order dated August 15, 1988.

Hilord moved, pursuant to Rule 59(e), to amend the judgment to award prejudgment interest. It contended that it was entitled to prejudgment interest as a matter of law, under N.Y.C.P.L.R. § 5001. The motion was made for the first time on June 23, 1988, more than 10 days after entry of the judgment. Although the motion was untimely under Rule 59(e), the court consented to treat the motion as having been made in the alternative under Rule 60. In its order dated August 15, 1988, however, the court denied the motion on the grounds that failure to award prejudgment interest was not a "mere clerical error that can be corrected under Rule 60(a)." The court further held that there were no other reasons justifying relief from operation of the judgment under Rule 60(b).

## DISCUSSION

█ We first address REI's contention that the district court erred in denying its motion for summary judgment. REI contests the court's determination that certain writings satisfied the merchant's exception to the Statute of Frauds. Both parties have conceded that no written contract for the sale of liquid toner concentrate was ever executed. Defendant argues here as it did at trial, that no agreement was ever reached between the parties.

The Statute of Frauds, N.Y.U.C.C. § 2–201(1) provides that a contract for the sale of goods valued at $500 or more is not enforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." An agreement between merchants may be enforced, however, if a writing in confirmation of the contract and sufficient against the sender is received, and the recipient has reason to know its contents. N.Y.U.C.C. § 2–201(2). Unless written objection to the contents of such writing is given within 10 days, the writing satisfies the Statute of Frauds. *Id.*

The adequacy of a writing for Statute of Frauds purposes "must be determined from the documents themselves, as a matter of law." *Bazak Int'l. Corp. v. Mast*

*Indus., Inc.,* 73 N.Y.2d 113, 118, 538 N.Y.S. 2d 503, 535 N.E.2d 633 (Ct.App.1989). Our review of the court's determination is extremely circumscribed. If we are satisfied that the statute's provisions were met, and the court's findings were not clearly erroneous, our review is at an end. *Apex Oil Co. v. Vanguard Oil & Serv. Co.,* 760 F.2d 417, 423 (2d Cir.1985). *See United States Fire Ins. Co. v. Federal Ins. Co.,* 858 F.2d 882, 884 (2d Cir.1988) (inferences drawn from writing are subject to clearly erroneous standard).

There are no rigid requirements as to the form or content of a confirmatory writing. A writing is sufficient so long as it affords a basis for believing that it reflects a real transaction between the parties. *Bazak,* 73 N.Y.2d at 123, 538 N.Y.S.2d 503, 535 N.E.2d 633; *Apex,* 760 F.2d at 423 (citation omitted); N.Y.U.C.C. § 2-201(2) official comment (McKinney 1964) ("all that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction"). The district court properly determined that, as a matter of law, documents delivered by Hilord to REI reflected a real transaction. The "Agreement Between Hilord and Ricoh [REI]" which was hand-delivered during a meeting between Terry Sickle and Eric Louie referred to Hilord's purchase of liquid toner from REI. The document also recited REI's obligation to provide Hilord with technical information on the product. In addition, Paul Sickle's letter to Eric Louie explicitly referenced an "agreement to distribute liquid toner." Both documents were sent well *after* REI's own letter of November 6, 1985 which recited in detail the terms of a sale of liquid toner to Hilord. In addition, after the Hilord letters were received, REI alerted its production department to Hilord's upcoming order. If Eric Louie disputed the contents of these writings he was required to deliver a written response in a timely fashion. Having failed to do so, he may not contest them under the Statute of Frauds. The merchant's exception having been met as a threshold matter in this case, plaintiff was entitled to go forward with evidence proving the existence and terms of the purport-ed oral contract. *Bazak,* 73 N.Y.2d at 119, 538 N.Y.S.2d 503, 535 N.E.2d 633; N.Y.U. C.C. § 2-201(2) official comment 3. Accordingly, we affirm the order denying REI's motion for summary judgment.

■ The district court's denial of REI's Rule 50(b) motion for judgment notwithstanding the verdict must also be affirmed. In support of its motion REI contended, in addition to its Statute of Frauds argument, that evidence of Hilord's damages was entirely speculative and insufficient as a matter of law to support an award. Hilord replies on appeal that the motion was procedurally defective because REI failed to request a directed verdict at the close of all the evidence. We agree.

The rule is well established that a motion for directed verdict at the close of all the evidence is a prerequisite for j.n.o.v. *See* Fed.R.Civ.P. 50(b) advisory committee's note; 9 C. Wright and A. Miller, FEDERAL PRACTICE AND PROCEDURE: Civil § 2537 at 596 (1971) ("Wright & Miller"); *American Protein Corp. v. A.B. Volvo,* 844 F.2d 56, 61 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). It is true that at the close of plaintiff's case REI made a motion to dismiss. *Compare Ebker v. Tan Jay Int'l, Ltd.,* 739 F.2d 812, 822–23 (2d Cir.1984) (motion to dismiss deemed to be motion for directed verdict). Nevertheless, even if the motion to dismiss could be considered a motion for directed verdict, with rare exception, a motion for directed verdict made at the close of plaintiff's case must be renewed at the close of all the evidence. *Cf. Best Brands Beverage, Inc. v. Falstaff Brewing Corp.,* 842 F.2d 578, 587 & n. 3 (2d Cir.1987) (failure to renew Rule 50 motion excused where court indicates renewal is unnecessary or where evidence following motion is "brief and inconsequential"), citing *Ebker,* 739 F.2d at 823. Here, the court reserved but never decided REI's motion to dismiss. Because REI failed to alert the court at the close of all the evidence that the motion was unresolved, the court's reservation of the motion did not cure REI's procedural defect. In any event, the motion for j.n.o.v. "cannot assert a ground that was not included

in the motion for a directed verdict." *Ebker v. Tan Jay Int'l,* 739 F.2d at 824 (citation omitted). In its motion for j.n.o.v., REI alleged Hilord's failure to prove its damages, a ground not stated in the motion to dismiss. Accordingly, the district court did not err in refusing the motion for judgment n.o.v.

■ By its procedural default at trial, defendant is precluded from obtaining j.n. o.v. in the appellate court. *Russo v. State of New York,* 672 F.2d 1014, 1022 (2d Cir. 1982); *Oliveras v. American Export Isbrandtsen Lines, Inc.,* 431 F.2d 814, 816 (2d Cir.1970). The usual rule moreover, is that appellate courts may not review sufficiency of the evidence claims unless those claims were preserved through motions for directed verdict and j.n.o.v. made at the trial level. *See* Wright & Miller, § 2536 at 593. *But see Russo,* 672 F.2d at 1022 (despite failure to seek directed verdict, new trial ordered to prevent manifest injustice where plaintiff failed to prove essential element of its case). However, defendant is not wholly barred from seeking appellate relief. A motion for j.n.o.v. is not a condition precedent to appeal from a final judgment. Wright & Miller, § 2540 at 611. Accordingly, REI is not precluded from challenging the district court's alleged error in refusing to instruct the jury on an essential element of the case. We therefore review REI's remaining claim on the merits.

■ REI contends a new trial is warranted because the jury was not instructed on a fundamental aspect of their right to award damages. It argues that under N.Y.U.C.C. § 2–715, consequential damages may not be awarded for breach of contract unless the plaintiff made a reasonable attempt to obtain a covering contract. In essence, it argues that in order to award lost profits the jury was required to find that Hilord attempted to mitigate its damages. We agree.

New York's Uniform Commercial Code, N.Y.U.C.C. § 2–715(2)(a) requires a buyer to seek a covering contract as a predicate to recovering lost profits. *See Happy Dack Trading Co., Ltd. v. Agro–Industries, Inc.,* 602 F.Supp. 986, 994 (S.D.N.Y. 1984); *cf.* N.Y.U.C.C. § 2–712(3) Official Comment (recovery of consequential damages is limited to damages which could not have been obviated by cover). In diversity actions, state law determines the substance of the instructions to be given. 5A J. Moore & J. Lucas, MOORE'S FEDERAL PRACTICE ¶ 51.02–1 at 51–3 (1989); *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1525 (11th Cir.1985). Absent a strong countervailing reason, the U.C.C. rule on cover should have formed the basis for a jury instruction in the instant case. Hilord contends a countervailing reason existed, in that there was insufficient evidence on the issue of cover to warrant an instruction. This contention is speculative at best, since the court did not state its reasons for refusing to give the instruction. In any event, a reading of the trial transcript indicates that evidence on the issue of cover was given. Terry Sickle testified that Hilord wished to sell toner products to Savin in finished form, as toner-dispersant packs ("TD packs"). Witnesses for both Hilord and REI named several suppliers of Savin TD packs. Terry Sickle stated that he learned from a Savin purchasing agent that Hunt and Synfax supplied Savin toner. Uncontroverted evidence established that Hunt and Synfax supplied approximately 50% of Savin's toner requirements. A Savin consultant testified that Synfax was not restricted from selling toner to entities such as Hilord, and that restrictions on Hunt had been lifted. A former Hunt employee testified that Hunt or Synfax would "entertain" a request to supply toner concentrate.

We are not persuaded that there was insufficient evidence adduced at trial to support a jury instruction on cover. It does not matter that the evidence was minimal or was presented in a piecemeal fashion. All that is necessary is that there be some evidence supporting a party's theory of the case. *See Doyle v. Exxon Corp.,* 592 F.2d 44, 47 (2d Cir.1979). If such evidence presents a question of fact for the jury, defendant is entitled to an appropriate instruction.

In the instant case, the jury could find that Hunt, Synfax or other suppliers were available sources of substitute goods. The inference was possible that Hilord could have mitigated its damages by ordering either bulk toner or finished TD packs from these sources. Accordingly, the court's unexplained refusal to instruct the jury on the issue of cover was error. Nor was the error harmless. REI's defense rested on two arguments: No contract was ever made, and Hilord failed to mitigate its damages. Once the jury determined that a contract had been made, the lack of an instruction on cover effectively directed a verdict in favor of Hilord on the issue of damages.

The appellate court has power to grant a new trial where a district court's denial of a Rule 59(a) motion is an abuse of discretion. *See Oliveras*, 431 F.2d at 815 and cases cited therein. The district court is normally entitled to deference in denying a motion for a new trial. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir.1987); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 133 (2d Cir.1986); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 690–91 n. 11 (2d Cir.1983). However, we will grant such relief where it is clear that the jury was not adequately instructed on issues essential to the case. *See Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 637 (2d Cir.1986); *EOI Electronics, Inc. v. Xebec*, 785 F.2d 391, 398 (2d Cir.1986); *Doe v. New York City Dept. of Social Services*, 649 F.2d 134, 143, 149 (2d Cir.1981), *on remand*, 709 F.2d 782 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Here, the jury was prevented from making a finding which was crucial to its verdict. The charge was therefore wholly inadequate. Accordingly, we remand for a new trial on the issue of damages.

Hilord cross-appeals from the judgment insofar as it denies an award for pre-judgment interest. New York C.P.L.R. § 5001(a) provides "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract." Where the action is one at law, interest under the statute is recoverable as of right. *Lewis v. S.L. & E., Inc.*, 831 F.2d 37 (2d Cir.1987). Upon remand, in the event Hilord prevails on the issue of damages it will be entitled to prejudgment interest in accordance with C.P.L.R. § 5001(a).

### CONCLUSION

In light of the foregoing, we affirm the district court's denial of REI's motions for summary judgment and judgment n.o.v. We do not disturb the jury's liability findings as to defendant REI. However, we vacate the judgment in favor of Hilord, and remand to the district court for a new trial limited to the issue of damages. We also vacate the order denying Hilord's motion for prejudgment interest.