JEWELL–RUNG AGENCY,
INC., Plaintiff,

v.

The HADDAD ORGANIZATION,
LTD., Defendant.

No. 91 Civ. 5645 (RPP).

United States District Court,
S.D. New York.

Feb. 19, 1993.

Lynn & Ledwith, Garden City, NY, by Leo F. McGinity, Jr., Robert Lynn, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, by Lewis R. Clayton, Matthew L. Levine, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Jewell-Rung Agency, Inc. ("Jewell-Rung"), seeks damages in excess of $350,000 for the defendant's alleged breach of contract. Defendant The Haddad Organization, Ltd. ("Haddad"), moves for summary judgment on the issue of damages and to strike portions of the affidavits of Donald Jewell and Leo McGinity, submitted by Plaintiff in opposition to summary judgment, on the ground that they do not comply with Fed.R.Civ.P. 56(e). Plaintiff cross-moves based on Rule 56(e) for an order striking portions of the affidavit of Neal Robson, submitted in support of Defendant's motion for summary judgment. For the reasons set forth below, Plaintiff's motion to strike is denied, Defendant's motion to strike is granted in part and denied in part, and Defendant's motion for summary judgment is denied.

Also before the Court and addressed in the final section of this Opinion and Order is a discovery dispute as to the propriety of defense counsel's representation of a non-party witness, James Baum, in a deposition pertaining to this action.

## BACKGROUND

Jewell-Rung is a Canadian corporation engaged in the business of importing and selling men's clothing at wholesale. Haddad is a New York corporation that manufactures men's outerwear sold under the "Lakeland" label.

In 1990, Jewell-Rung ordered samples of Lakeland men's outerwear from Haddad so that it might seek orders for this clothing from Canadian retailers. Haddad supplied Jewell-Rung with the ordered samples, which Jewell-Rung used to obtain orders from customers in Canada.

In January of 1991, Jewell-Rung placed an initial purchase order with Haddad for 2,325 garments of Lakeland men's outerwear, having a total listed price of approximately $250,000 in American currency, for the Fall 1991 season. By February 1991, Plaintiff had taken orders for 372 of these garments at a wholesale price of $107,506 in Canadian currency.

According to Jewell-Rung's Complaint, Haddad accepted its purchase order in January 1991 with the understanding that Jewell-Rung would obtain an exclusive distributorship of Lakeland outerwear in Canada, but Haddad, after accepting the order, granted a third party, Olympic Pant and Sportswear

Co. ("Olympic"), the exclusive right to sell, manufacture, and market Lakeland outerwear throughout Canada. Plaintiff alleges that Haddad's acceptance of its January 1991 purchase order created a binding contract, which Haddad subsequently breached by failing to fill the purchase order and entering into its exclusive distributorship agreement with Olympic. Plaintiff further alleges that because it did not learn of Haddad's alleged breach until February of 1991, it was unable to fill its customers' orders for Lakeland goods for the Fall 1991 season or to obtain a substitute line of men's outerwear and, as a result, sustained over $350,000 in damages.

For the purposes of this summary judgment motion only, Defendant Haddad concedes that its acceptance of Jewell–Rung's January 1991 purchase order created a binding contract and that Haddad's agreement with Olympic constituted a breach of that contract. The defendant seeks summary judgment with respect to damages on three grounds: (1) Plaintiff's failure to mitigate damages bars any recovery; (2) Plaintiff's refusal to cover prohibits recovery of consequential damages; and (3) alternatively, any recovery by Plaintiff of lost profits must be limited to the profits derived from the orders already placed by Plaintiff's customers at the time of Defendant's breach of contract.

## DISCUSSION

### I. MOTIONS TO STRIKE

Each party moves to strike portions of the other's affidavits for failure to satisfy the requirements of Fed.R.Civ.P. 56(e). Rule 56(e) provides that affidavits submitted in support of or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." A party may move to strike parts of an affidavit that do not comply with Rule 56(e). See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir.1988).

Haddad asks the Court to strike certain portions of the Affidavit of Donald Jewell, dated Sept. 11, 1992 ("Jewell Aff."), and the Opposing Affidavit of Leo F. McGinity, Jr., dated Sept. 9, 1992 ("McGinity Aff.") In particular, Haddad contends that portions of these affidavits are not based on the personal knowledge of the affiant, constitute inadmissible hearsay, or amount to legal conclusions, to which the affiant is not competent to testify. In considering Haddad's motion for summary judgment, the Court will disregard portions of the Jewell and McGinity Affidavits that constitute inadmissible hearsay, lack a basis in personal knowledge, or are argumentative or conclusory.

Plaintiff moves to strike certain statements from the Affidavit of Neal Robson, dated June 30, 1992 ("Robson Aff."), on the ground that these statements are inadmissible hearsay. All statements challenged by Plaintiff are non-hearsay either because they are offered not for their truth but to show that they were in fact made, see Robson Aff. at ¶¶ 3, 5 (first and third sentences), or because they are admissions by a party-opponent as defined by Fed.R.Evid. 801(d)(2), see id. at ¶¶ 4, 5 (last sentence).

### II. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

Federal Rule of Civil Procedure 56(b) provides that a party against whom a claim is asserted may move for summary judgment "as to all or any part thereof." Courts have granted motions for summary judgment to limit damages while leaving issues of liability for trial. See, e.g., Karetsos v. Cheung, 670 F.Supp. 111, 114–15 (S.D.N.Y.1987) (denying defendant's motion for summary judgment as

to liability, but granting his motion to limit damages to recovery of expenditures and restitution); *Poultry Health Serv., Inc. v. Moxley,* 538 F.Supp. 276 (S.D.Ga.1982) (granting in part and denying in part plaintiff's motion for summary judgment on the issue of damages). *See also Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.,* Fed.Sec.L.Rep. (CCH) ¶ 96,654, 1992 WL 73473 (S.D.N.Y. Apr. 1, 1992) (Sand, J.) (considering but denying on the merits defendants' motion for partial summary judgment limiting any potential damages to out-of-pocket expenditures).

Haddad moves for summary judgment on the issue of damages only. More specifically, Haddad asks this Court to rule that (1) Jewell–Rung's failure to mitigate damages bars any recovery; (2) Jewell–Rung's refusal to cover prohibits recovery of consequential damages; and, in the alternative, (3) any recovery of lost profits should be limited to the profits derived from the confirmed orders placed with Jewell–Rung at the time of the alleged breach of contract.

A. The availability of damages in general

New York's Uniform Commercial Code[1] provides that a buyer may recover damages for a seller's breach of a contract of sale by either of two methods. N.Y.U.C.C. § 2–711(1). The buyer may either "cover" and obtain damages under N.Y.U.C.C. § 2–712, or recover damages for non-delivery as provided under N.Y.U.C.C. § 2–713.

■ It is undisputed that Jewell–Rung, the buyer in this case, did not "cover" and may seek damages under section 2–713 only. This section provides that "the measure of damages for non-delivery or repudiation by the seller is the difference between the mar-ket price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages . . ., but less expenses saved in consequence of the seller's breach."

Haddad asserts that at the time when Jewell–Rung learned of the alleged breach of contract, Olympic offered to sell Jewell–Rung Lakeland outerwear to fill all of its orders at the contract price to which Jewell–Rung and Haddad had agreed. According to Haddad, the market price of the goods at the time when the buyer learned of the breach was therefore equivalent to the contract price, and the buyer is deemed to have suffered no damage under section 2–713.

■ Plaintiff has, however, demonstrated the existence of a genuine issue of fact as to whether Olympic actually offered to supply Jewell–Rung with the same goods at the same price agreed upon by Haddad. The only competent evidence submitted by the defendant to show that such an offer was indeed made is the Affidavit of Neal Robson, who was vice-president of Olympic at the time of the events at issue. Mr. Robson states that he told Donald Jewell of Jewell–Rung in February of 1991 that "Olympic would sell to Jewell–Rung the same Lakeland outerwear that Jewell–Rung had ordered from Haddad at the same price Haddad had quoted to them." Robson Aff. at ¶ 5.

The plaintiff has submitted the Affidavit of Donald Jewell, which directly contradicts Mr. Robson's statement. Mr. Jewell, who is the president of the plaintiff corporation, states that "at no time did [Mr. Robson] offer to sell me the goods at the same price as set forth in my purchase order with The Haddad Organization." Jewell Aff. at ¶ 7.[2] The sub-

---

1. The parties do not dispute that New York law governs the recovery of damages in this matter.

2. During his deposition, conducted approximately three months prior to the execution of his affidavit, Mr. Jewell was asked, "Did [Mr. Robson] offer to sell you the goods that you ordered from The Haddad Organization at the same price?" Affidavit of Adam D. Mitzner, dated July 21, 1992 ("Mitzner Aff."), Exh. A at 192. Jewell responded, "I don't recall that part." *Id.*

Haddad argues that the Jewell Affidavit carries no weight because Jewell's statement that Rob-son did not offer him the same goods at the same price conflicts with this prior deposition testimony that he could not recall such an offer. A party may not defeat a motion for summary judgment by submitting an affidavit disputing his own prior sworn testimony. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir.1991). Jewell's affidavit does not, however, necessarily dispute his deposition testimony and is therefore considered competent evidence on this motion for summary judgment.

mission by each party of competent but conflicting accounts as to the nature of any offers made by Olympic to Jewell–Rung presents a genuine issue of material fact as to the available market price for the Lakeland goods at the time of Defendant's alleged breach of contract.

■ Haddad further contends that the existence of this genuine issue of fact as to price is immaterial to Plaintiff's claim for damages because Plaintiff concedes that it would have rejected Olympic's offer to sell it substitute goods at any price. Plaintiff maintains that purchasing and selling Lakeland goods manufactured by Olympic would have operated to the detriment of its own sales of competing lines of outerwear in the future. Haddad asserts that Plaintiff's refusal to buy from Olympic constitutes a breach of its duty to mitigate damages and therefore bars recovery in this action.

Haddad's argument boils down to an assertion that Plaintiff's failure to effect cover bars recovery of damages under section 2–713. However, the Uniform Commercial Code makes clear that "cover" is an alternative to the relief authorized under section 2–713, *see* N.Y.U.C.C. § 2–711(1), and that failure of a buyer to effect cover "does not bar him from any other remedy." *Id.* at § 2–712(3). "Recovery of damages based on market price fluctuation under Section 2–713 is not ... contingent upon the buyer's attempting to cover." *Kashi v. Gratsos*, 790 F.2d 1050, 1056 (2d Cir.1986). Accordingly, Plaintiff's failure to purchase substitute goods from Olympic or any other seller does not preclude recovery of damages for Haddad's alleged breach of contract.

**B. The availability of consequential damages**

■ Haddad maintains that Jewell–Rung's failure to effect cover bars it from recovering consequential damages. Although N.Y.U.C.C. § 2–712(3) explicitly states that "[f]ailure of the buyer to effect cover ... does not bar him from any other remedy," the Official Comment to this section of the Uniform Commercial Code cautions that it must be read in conjunction with section 2–715(2)(a). *See* N.Y.U.C.C. § 2–712 Official Comment at 645 (McKinney 1964). Section 2–715(2)(a) limits consequential damages to losses "which could not reasonably be prevented by cover or otherwise."

As previously stated, Jewell–Rung does not dispute that it did not attempt to effect cover. However, a genuine issue of material fact exists as to whether Jewell–Rung's failure to seek cover was reasonable under the circumstances.

■ Jewell–Rung provides several reasons why it did not seek cover. In explaining why it did not buy goods from Olympic, Jewell–Rung states that it had the following concerns: that its customers would not be satisfied with the quality of Lakeland goods manufactured by Olympic, which specializes in the production of lower-priced clothing for discounters and department stores, Jewell Aff. at ¶¶ 8–10, 14; that supplying its customers with outerwear manufactured by Olympic for the Fall 1991 season would provide Olympic with an entree to those customers for all of the next season's goods, *id.* at ¶ 16;. and that purchasing goods from Olympic would place it at the complete mercy of a competitor for the timely supply of goods, *id.* at ¶ 23 n. 4.

Jewell–Rung further points out that it had no source other than Olympic for Lakeland goods, which were not fungible but were "branded goods, manufactured from specific patterns and specific styles." *Id.* at ¶ 23. In addition, Jewell–Rung alleges that substitutions for Lakeland goods were not available that late in the purchasing cycle, and that it was in fact unable to find a replacement line for two seasons. *Id.* at ¶ 25.

Based upon the reasons put forth by Jewell–Rung for its failure to cover, this Court cannot say at this time that such failure to cover was unreasonable as a matter of law. The cases cited by Defendant, *Happy Dack Trading Co. v. Agro–Industries, Inc.*, 602 F.Supp. 986 (S.D.N.Y.1984), and *Hilord Chem. Corp. v. Ricoh Elecs., Inc.*, 875 F.2d 32 (2d Cir.1989), are factually distinguishable. In *Happy Dack*, the Court denied recovery of lost profits because the plaintiffs failed to effect cover as to a fungible good, i.e. resin, that was available on the open

market. *Happy Dack*, 602 F.Supp. at 994. Specific brands and styles of clothing, such as the Lakeland goods at issue here, are not so fungible. *See Texpor Traders, Inc. v. Trust Co. Bank*, 720 F.Supp. 1100, 1114 (S.D.N.Y.1989). In *Hilord Chem. Corp.*, the Court did not actually decide that the plaintiff had unreasonably failed to cover; it held only that the trial court should have instructed the jury on the issue of cover in light of testimony that specific sources of substitute goods were available to the plaintiff. *Hilord Chem. Corp.*, 875 F.2d at 38.

Accordingly, the defendant's motion for summary judgment is also denied insofar as it seeks to bar recovery for consequential damages.

C. Limitation on recovery of lost profits

In the alternative, Haddad asserts that any lost profits awarded to Jewell–Rung should be limited to those derived from confirmed orders placed by Jewell–Rung's customers at the time of the alleged breach.

Under New York law, recovery of lost profits has three prerequisites. First, the party seeking lost profits must demonstrate "with certainty that such damages have been caused by the breach and, second, the alleged loss must be capable of proof with reasonable certainty." *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 502 N.Y.S.2d 131, 132, 493 N.E.2d 234, 235 (1986). Third, "there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made." *Id.; accord Care Travel Co. v. Pan American World Airways, Inc.*, 944 F.2d 983, 994 (2d Cir.1991).

Before any evidence of lost profits is presented in this matter, Haddad asks the Court to rule as a matter of law that lost profits, with the exception of anticipated payments for garments already ordered by retailers at the time of breach, are incapable of proof with reasonable certainty. Haddad makes two arguments in support of this position.

■ First, Haddad cites *Texpor Traders*, 720 F.Supp. at 1114, *Wullschleger & Co. v. Jenny Fashions, Inc.*, 618 F.Supp. 373, 378 (S.D.N.Y.1985), and *Harbor Hill Lithograph-*

*ing Corp. v. Dittler Bros., Inc.*, 76 Misc.2d 145, 348 N.Y.S.2d 920, 924 (Sup.Ct.Nassau Cty.1973), for the proposition that in the case of a wholesaler, lost profits are restricted to those pertaining to confirmed orders of resale. None of these cases comes close to establishing such a per se rule. Each case merely limits recovery of lost profits after the plaintiff has presented evidence and failed to demonstrate a reasonable basis for calculating lost profits other than those derived from confirmed orders that were in place at the time of breach.

■ Second, Haddad maintains that lost profits are rarely appropriate where the injured party is a new business because such damages are by nature highly speculative. When a "new business" seeks to recover lost profits, "a stricter standard" of proof is required "for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty." *Kenford Co.*, 502 N.Y.S.2d at 132, 493 N.E.2d at 235; *accord Care Travel Co.*, 944 F.2d at 993. This heightened standard of proof for new businesses indicates that new ventures will have difficulty demonstrating lost profits; it does not mean that new businesses should be denied an opportunity to present their evidence of such damages at trial.

■ Whether Jewell–Rung is in fact a "new business" within the meaning of *Kenford Co.* is itself unclear. It is new to the business of selling Lakeland products in Canada, but its experience as a wholesaler of men's clothing in Canada is evidence of its viability as an enterprise and could, for example, yield evidence as to previous patterns of profit on resale of similar lines of clothing.

Accordingly, Defendant's request to limit recovery of lost profits to confirmed orders of resale is denied at this time.

III. DISPUTE REGARDING DISCOVERY

During June of 1992, a dispute arose between the parties regarding defense counsel's representation of James Baum, a nonparty witness and former vice-president of Defendant's Lakeland division. On June 5,

1992, Plaintiff asked this Court to prohibit defense counsel from continuing to represent Mr. Baum at his deposition and to prevent defense counsel from advising Mr. Baum to invoke the attorney-client privilege in response to the plaintiff's questions regarding his discussions with defense counsel. On June 12, 1992, Defendant moved by order to show cause for an order permitting defense counsel to represent Mr. Baum at his deposition and prohibiting the plaintiff from obtaining any testimony at Mr. Baum's deposition that would divulge communications between the deponent and defense counsel that are privileged or attorney work product.

Continuing acrimony between the parties prompted this Court to order them to appear before it on June 16, 1992, to complete Mr. Baum's deposition. At his deposition, Mr. Baum testified that defense counsel had offered to represent him at the deposition free of charge. Mr. Baum explicitly stated that he did not request representation by counsel and did not feel that he needed it.

 The completion of the Baum deposition rendered moot the parties' applications for rulings as to whether defense counsel may represent Mr. Baum and whether communications between Mr. Baum and defense counsel are protected from disclosure.

A note of caution is nevertheless in order. Defense counsel has informed the Court that its firm practice is to offer representation to all former employees of its corporate clients free of charge. Dual representation of a party corporation and a nonparty former employee of that corporation presents a potential for abuse in that it provides a means for the corporate party to exert influence and control over a nonparty witness. It thereby creates the potential for ethical problems that threaten the integrity of the judicial system. It also leads to the sort of disputes that arose here, and even if no ethical violations occur, creates an appearance of impropriety to laypeople.

In the event that abuses or ethical breaches are shown to have resulted from such a dual representation arrangement, courts may impose sanctions upon the abusing party. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 658 F.2d 1355, 1361 (9th Cir.1981), *cert. denied,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982). Although no specific abuses or ethical breaches have been demonstrated here, counsel is advised to proceed with care when it offers representation to nonparty witnesses which is presumably to be paid for by its party client.

### CONCLUSION

For the reasons set forth above, Plaintiff's motion to strike is denied, Defendant's motion to strike is granted in part and denied in part, and Defendant's motion for summary judgment is denied.

IT IS SO ORDERED.