**Donald W. BRINK, Plaintiff,**

v.

**UNION CARBIDE CORPORATION,
Defendant.**

**No. 93 Civ. 2500 (RO).**

United States District Court,
S.D. New York.

Nov. 20, 1997.

Wisehart & Koch, New York City (Arthur M. Wisehart, of counsel), for plaintiff Donald W. Brink.

McDermott, Will & Emery, New York City (Joel E. Cohen, of counsel), for defendant Union Carbide Corporation.

MEMORANDUM AND ORDER

OWEN, District Judge.

In this action where plaintiff Donald Brink alleges age discrimination in his 1992 employment termination from Union Carbide Corporation, there is before me a motion for summary judgment by the defendant. Preliminarily, however, defendant addresses four affidavits submitted by plaintiff in opposition to the motion. It

asks the Court to strike two in their entirety and to strike portions of the other two, based upon Rule 56(e) of the Federal Rules of Civil Procedure which sets forth the standard to which affidavits in support of or in opposition to motions for summary judgment must conform:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. § 56(e). A party may move to strike affidavits or parts of affidavits that do not comply with the Rule. *See Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988); *Jewell–Rung Agency, Inc. v. Haddad Organization, Ltd.,* 814 F.Supp. 337, 339 (S.D.N.Y.1993).

■ Addressing first the plaintiff's own affidavit in opposition, it contains many paragraphs of conclusory assertions, hearsay statements not based upon personal knowledge and/or legal arguments or conclusions which obviously can not be looked to as raising material issues of fact. For example, Paragraphs 15–17 reads as follows:

> 15. The forced ranking procedure utilized by Union Carbide to select employees for termination under the Enhanced Separation Program ("ESP") perpetrated upon the Company's older employees was a pretextual sham designed to conceal and disguise intentional age discrimination.
>
> 16. Formal procedures governing the forced ranking of employees were not followed, and the process was a charade.
>
> 17. Age discrimination necessarily resulted because of the age bias inherent in the criteria utilized in the forced ranking process including subjective categories with a bias against older employees such as "reassignment potential."

These are illustrative of as much as half of the 32–page affidavit of the plaintiff. Also illustrative is ¶ 69 which reads:

> 69. The change of codes following my objection to Union Carbide's coercive ESP program is evidence of retaliation by the creation of a stigma intended to impair my ability to secure other employment either within or outside the company.

The foregoing is sheer conclusion without factual backup. Similar is ¶ 81 which reads as follows:

> 81. Contrary to Union Carbide's contention that the changes in the business impacted upon the need for fewer employees in the FP & A, the facts show it actually required more employees to perform the functions necessary to complete the increased work load when work farmed out to other units is considered.

A number of statements from the pen of plaintiff in addition to being hearsay, argumentative and conclusory, are an effort to trade on emotional buzz-words. Paragraphs 89–91 reads as follows:

> 89. Furthermore, as shown in the Lightfoot affidavit paragraph 43 submitted herewith, a Human Resources executive, Maria A. Guariglia, stated during her deposition taken on April 9, 1993, that 400 to 500 employees were affected by termination under the ESP program. *Approximately fifty percent of these employees complained to her about age being a factor under the program.* Nearly all of such complaints were received from individuals over the age of 50. (TR 104–06, Exhibit I of Lightfoot Affidavit submitted herewith.)
>
> 90. Such statement by a company Human Resources executive is evidence that the purpose and effect of the forced ranking program, was (1) to eliminate executives age 40 and older from the corporation; (2) to replace them with younger personnel less experienced and qualified; (3) to disguise and conceal the pervasive plan of age discrimination as a purported reduction in force consequent upon corporate restructuring.

91. The treatment of me was according to the pattern and practice of Union Carbide to discriminate against older personnel by creating a degrading and hostile work environment for them.

Accordingly, as to plaintiff Brink's affidavit, the motion to strike is granted as to paragraphs 7, 9, 10,[1] 15–18, 20, 21, 28[2], 35, 42, 45–47,[3] 51, 53–55, 56–9, 60(a), (d), (f), (g), 61–7, 69–70, 79–80[4], 81–6, 88–96, 100[5], 101–5, 108, 111–12, 118, 121, 123, 125–6, 135–7.

■ The affidavit of Richard H. Lightfoot is stricken in its entirety. Whereas Brink, a certified public accountant, was a senior analyst in Union Carbide's Financial Planning and Analyst Unit, Lightfoot was a Union Carbide chemist working in the ICD marketing group in a completely different division. The ranking preceding Lightfoot's termination was conducted by different decision makers; Lightfoot and Brink did not know each other. Therefore, plaintiff's attempt to analogize Lightfoot's termination to his,[6] is not probative of the circumstances behind Brink's termination. *See, e.g., Schrand v. Federal Pacific Electric Company,* 851 F.2d 152, 156 (6th Cir.1988). Schrand held that the testimony of two terminated older employees who each worked in a different part of the country under different supervisors regarding age bias and comments of other decision makers was inadmissible in an age discrimination action by a third employee. Nor was this as a matter of law sufficient to establish a "pattern and practice" of age discrimination. *See Haskell v. Kaman Corp.,* 743 F.2d 113, 121, (2d Cir.1984). Accordingly, Lightfoot's affidavit is stricken.[7]

■ Raymond Terwilliger's affidavit submitted by the plaintiff is also stricken in its entirety. It was submitted under the rubric of expert opinion. Terwilliger never worked for Union Carbide.

FRE 702 governs the use of expert testimony at trial.

1. The flaw with 10 is not as to the recital of underlying facts which are contained in documents outside the affidavit and they are not objected to, but it is the argument that the paragraph makes from those documents which is the basis for striking the paragraph.

2. Here the flaw is that factual statements are made without any showing of personal knowledge and then legal conclusions are drawn therefrom.

3. These are generalized arguments and conclusions asserted as fact and the Court is given no indication of any personal knowledge as to the connections.

4. Nothing could be more contrary to the requirements of Rule 56(e) than Paragraphs 79–80 where in a sweeping unsupported statement Brink asserts as follows:
79. To my direct knowledge, bias against older employees was and is a part of the permanent corporate psyche of Union Carbide Corporation at the management level. 80. Age discrimination was and is so entrenched at Union Carbide that, instead of accepting the lesson taught by the *Whittlesey v. Union Carbide Corp.* litigation, 742 F.2d 724 (2d Cir.1984), involving the company's distinguished former Chief Labor Counsel, and eliminating the unlawful pattern and practice of age discrimination root and branch from its way of doing business, Union Carbide resorted to crafting devious pretextual purported restructuring scenarios and using the resulting reductions in force as a smoke screen in order to camouflage unlawful acts of age discrimination. If there exists to Brink's personal knowledge facts admissible in evidence from which the above conclusions would flow, that was required to be handled in that fashion and not as the above paragraphs chose to do in an argumentative unsupported manner obviously designed to be inflammatory.

5. The personnel officer's testimony obviously is something apart from the Brink affidavit and continues to be before the Court.

6. (Even though noting that Lightfoot won his case of age discrimination).

7. I note that the Lightfoot affidavit (Lightfoot being represented by the same counsel as Brink in his action here) contains the same plethora of hearsay and conclusory paragraphs which flawed the Brink's affidavit discussed above. Thus were it not excludable in its entirety, the Court would have been required to strike the many inadmissible paragraphs.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

While Terwilliger has some background in the field of corporate human resources, that does not give him the expertise to evaluate a discrimination claim alleging a case of age discrimination—he is not being proffered as a fact witness. *See Mitroff v. Xomox Corporation,* 797 F.2d 271, 277 (6th Cir.1986). Further, it should be noted that this is not an area that requires expert testimony since a lay jury is capable of understanding the facts and issues here to reach a determination without the aid of an expert, since for this purpose "scientific technical, or other specialized knowledge" is not required. *See, e.g., Barfield,* 911 F.2d at 651 n. 8; *Mitroff,* 797 at 277; *Mercado v. Austin Police Dept.,* 754 F.2d 1266, 1268–69 (5th Cir.1985); *Ward v. Westland Plastics, Inc.,* 651 F.2d 1266, 1271 (9th Cir.1980); *Smith v. Colorado Interstate Gas Co.,* 794 F.Supp. 1035, 1044 (D.Colo.1992). In this connection, I note that another Judge of this Court, District Judge Harold Baer, Jr. who presided over the Lightfoot case, earlier reached the same conclusion I reach as to Mr. Terwilliger's lack of expertise for the very testimony proposed here for which he was proffered in *Lightfoot, supra. Lightfoot v. Union Carbide Corporation,* 1997 WL 543076, (S.D.N.Y.1997).[8]

■ Dr. S. Ramanujam is also proffered as an expert. Defendant moves to strike portions of his affidavit which assert conclusory allegations without foundation and legal conclusions as to the ultimate issues in the case. Dr. Ramanujam's area of expertise is in the field of mathematics, actuarial and statistical. He is not experienced in the rating of employees in connection with a reduction in force, nor does he assert any knowledge of the factors here used in determining an employee's value and reassignment potential. Accordingly, his experience gives him no foundation to address age bias in the evaluation of employees. *See Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512, 1529 (M.D.Fla. 1989); *W & G Seaford Assocs. v. Eastern Shore Markets, Inc.,* 714 F.Supp. 1336, 1351, (D.Del.1989). Thus paragraphs 14, 15, 17, 20, and 22 of his affidavit are stricken.[9]

Accordingly, given the exclusions of the affidavits of Lightfoot and Terwilliger and the striking of substantial portions of the affidavits of Brink and Ramanujam, the

8. Given the above, I need not reach other apparently valid grounds for striking Terwilliger's affidavit such as that Terwilliger has an obvious bias in favor of the plaintiff's case. Mr. Terwilliger was represented by Mr Wisehart, the same lawyer that represents the plaintiff here in his own age discrimination case against his own former employer, The Leslie Fay Companies, Inc. and accordingly Terwilliger is not a "neutral" expert but rather conveys the strongest appearance of partiality to Brink's cause. This alone would be sufficient to exclude him as an expert here. *See Stachniak v. Hayes,* 989 F.2d 914, 925 (7th Cir.1993). Further, Terwilliger proposed to give an opinion which merely tells the jury what result to reach. This is not properly the subject of expert opinion. *See Advisory Committee's Nonpartial Rule, 704; Hygh v. Jacobs,* 961 F.2d 359, 363–64 (2d Cir.1992).

9. Further, I note two things as to Dr. Ramanujam's charts: first, a sampling of only eight employees, solely by age without any other factors, is too small to be of any statistical significance in the course of this major reduction in force. Second, I note Dr. Ramanujam's exhibits C–I have as a starting point for their linear plotting the fact that the youngest employee ranked was rated by the evaluations as having the greatest strength. This fact alone necessarily dictates Ramanujam's entire linear plotting and if that employee, Davlos, were either removed or were treated as average, the change of that single factor would radically change all the schedules Ramanujam has plotted, to the point that no significant conclusions could be reached from any of the schedules. Indeed to the Court's eye, it would appear to reverse the conclusions drawn on schedules F, G, and H and would level schedule J.

parties are directed to rebrief the summary judgment motion because of the changed picture that now exists. The defendant shall have 21 days from the date hereof, with the plaintiff having one week to answer and the defendant one week to reply. I will thereafter schedule argument on the motion.