174

Rose Mignon et al., Doing Business as R. Mignon & Sons, Respondents, *v.* Tuller Fabrics Corp., Appellant.

First Department, February 14, 1956.

*Emanuel Wexler* of counsel (*Gordon & Wexler,* attorneys), for appellant.

*Benedict Ginsberg* of counsel (*Louis L. Kahn* with him on the brief; *Charles Fredericks,* attorney), for respondents.

Bergan, J. Plaintiffs are dress manufacturers; defendant is a designer and jobber of dress fabrics. In January, 1953, the parties entered into two written contracts for the purchase and sale of fabrics. Plaintiffs sue for defendant's failure to deliver a very substantial part of the goods; and defendant relies upon an indication by plaintiffs they would not take the goods as excusing further performance both as a defense and to support a counterclaim in the action. The court dismissed defendant's counterclaim at the end of the proof as a matter of law, and submitted plaintiff's cause to the jury. A verdict in favor of plaintiffs for $8,572.07 was returned.

The two written contracts, one of January 15th and the other of January 26, 1953, are identical in their description of subject matter, of quantity, and of price. The fabric thereby sold by defendant and purchased by plaintiffs was "Silk and

Bemberg.'' It is further described in the contracts by a designating number derived from defendant's stock — '' No. 718.''

Silk and Bemberg is a fabric woven with silk thread and with rayon thread. The price per yard in each contract was $5; the quantity 1,000 yards. '' No. 718 '' was a tucked fabric which defendant had designed with the tuck woven in the cloth itself. The tuck differed, therefore, from one that is ironed or sewed in the fabric; and the weaving was done with predyed yarns.

It is not at all in dispute in this record, either that these contracts for this fabric in these quantities and at this price were made by the parties and formalized by instruments sufficient in form, or that defendant did not make in full the deliveries it agreed to make, but furnished only relatively small portions of the promised quantities. It could also very readily be found in this situation that plaintiffs suffered damage because the promised fabric was not delivered.

The proof is that plaintiffs took orders from customers in the trade in reliance upon the availability of the fabric called for by the contracts. The verdict was based in part on the loss of profits claimed by plaintiffs, $6,695.74; and in part on make-ready expenses incurred by them in the sum of $1,876.33. In the event of their right to recover, whether they would be entitled to damages based on these losses would depend upon a finding by the jury that there was no available market '' for the goods in question '' (Personal Property Law, § 148).

The usual measure of damage, of course, would be the difference between the market value and the contract price; but it is a fair question of fact under this record whether the fabric was then available on the market. Even if it were not, the make-ready expense upon which recovery is in part based, would ordinarily be absorbed in the profit if the latter were allowed by the jury; but in fairness to the actual course followed in submission by the court to the jury in this case such duplication seems to have been eliminated in the computations arrived at by the judge after consultation with counsel.

Although the trial lasted for over a week, evolving a record on appeal in this court of 441 pages and illumined by 138 pages of printed briefs, the fundamental issue between the parties turns on a narrow question of fact. The problem which confronts us is whether this issue was so submerged by the course pursued by the parties in litigating it, that in the end the jury could see only obscurely the contour and shape of the factual problem upon which its verdict was to rest.

This central issue is whether defendant, in undertaking to deliver the relatively small quantities of fabric soon after execution of the contracts, one of 33⅞ yards on February 18th and one of 17½ yards two days later on February 20th, furnished the quality of material described in the instruments; and if it did, whether the plaintiffs expressed such dissatisfaction with it as to amount to a disavowal of their future acceptance.

In short, the question is whether defendant would reasonably be led to believe, from plaintiffs' acts and statements, that plaintiffs would breach the contract and that it, as seller, would become excused from further performance and entitled to treat the contracts as breached by the buyers.

If, as defendant contends, there was an anticipatory breach of contract and this is found factually by the jury, not only should defendant be excused from further performance of its agreements, but the jury would be justified in finding for defendant on the counterclaim. '' A promissor '', as Williston has noted, '' can no more be expected to perform his promise when it is clear that he is not going to receive counter-performance than when he actually has not received it.'' (5 Williston on Contracts [Rev. ed.], § 1301, p. 3699.)

The rule excusing further performance when there has been an anticipatory breach and authorizing recovery against the party so indicating an intention to breach is a rule sustained by '' the great weight of authority '' (17 C. J. S., Contracts, § 472, subd. a). It is recognized in New York. (*Plunkett* v. *Comstock, Cheney Co.,* 211 App. Div. 737, 741; *Estes* v. *Curtiss Aeroplane & Motor Corp.,* 191 App. Div. 719, affd. 232 N. Y. 572; *Perlman* v. *Israel & Sons Co.,* 306 N. Y. 254, 257; *Henderson Tire & Rubber Co.* v. *Wilson & Son,* 235 N. Y. 489.) (See, also, the evaluation by Dowling, J., of *Thomas* v. *Gage,* 156 N. Y. 612, as an authority sustaining the theory of '' anticipatory breach '' in discussing one aspect of this question in *Del Piatta* v. *Mendoza,* 195 App. Div. 833, 838.)

If, as plaintiffs contend, they were willing to take the fabric of the quality furnished in small quantities by defendant in deliveries on February 18 and 20, 1953, as being in conformity with the contracts, and gave no indication of dissatisfaction with this material, a verdict for plaintiffs would be fully warranted, since it is not at all disputed by defendant that the additional deliveries promised to complete the contract were not made.

The fulcrum of the controversy, therefore, lies in a relatively limited area of the record. Testimony adduced on this point by

plaintiffs in substance is that one of them (John Acunto, Jr.) in communication with defendant urged the delivery of the fabric on a number of occasions; that defendant was having difficulty in getting a mill to produce it and an officer of defendant told Acunto that the mill " couldn't make it " and that " I wasn't going to get my goods; " that plaintiffs insisted the goods be delivered; and that although defendant's representative agreed to " try further " to get it made, nothing more was heard from him and the goods did not come.

The obverse side of the issue, for which defendant contends, is that Acunto was not satisfied with the February 18th and 20th deliveries; that he complained in detail of the quality and said " I may have to forget about this "; that another plaintiff, Vincent Acunto said " we got to get better goods than this "; and that plaintiffs advised defendant that the last delivery of February 20th was " no better " in quality; and that thereupon defendant ordered the weaving to stop.

If, as defendant contends, the technical complaints about quality arose from conditions normal to fabric " No. 718," the " woven tucked fabric," the jury could find that defendant was justified in stopping the weaving and making no further deliveries, and could recover on its counterclaim.

This issue became submerged and obscured as the case finally went to the jury. The jury was advised by the court that plaintiffs sued for a breach of contract and that defendant's theory was that " during the progress of negotiations and during the progress of the work involving the making of contracts   *   *   * the contracts were cancelled and the plaintiffs said they wouldn't go through with this venture."

The further instruction to the jury based on this description of the controversy was as follows: " So the defendant says no contract was made and consequently it is under no obligation to make any payment to the plaintiffs." The court further said: " The proposition here is was there a contract made for the delivery of this merchandise? Was the contract repudiated? Did the plaintiffs say that they did not wish to continue with the contract? "

It is true enough that the basic issue may be implied in portions of these instructions, i.e., whether plaintiffs would not " go through " with or " repudiated " the contract; but the issue that seems in the submission to overcast the whole controversy is the existence of the contract, which is not disputed; and its express cancellation, which is not claimed.

The opportunity for clarification in the request by defendant's counsel to charge that " there is no issue that the written contracts in evidence were made " was not accepted by the court and this, no doubt, left somewhat stronger the impression that could have arisen under the earlier words of the instruction that this, indeed, was the real issue.

In other respects, however, the confusion with which the issues were left with the jury may be attributable to the numerous, wide and ranging digressions of counsel in the presentation of the case. There is, of course, more to be said and proved about this case than the conversations and discussions about the February 18th and 20th deliveries, such as the nature of the fabric, its merits and limitations; and the earlier understanding and conversations of both litigants and the understanding of the trade about it; but the overriding issue is how the parties acted toward the subject matter of these contracts when the deliveries began to be made on February 18th and 20th. That issue was so far lost upon the trial that it ought to be re-examined.

The judgment should be reversed and a new trial ordered, but without costs in view of the excessive length of appellant's briefs.

PECK, P. J., BREITEL and Cox, JJ., concur.

Judgment unanimously reversed and a new trial ordered, but without costs in view of the excessive length of appellant's briefs.