**JONEIL FIFTH AVENUE LTD.,**
Plaintiff,

v.

**EBELING & REUSS CO., and River
Shore Productions, Inc., Defendants.**

No. 78 Civ. 4532.

United States District Court,
S. D. New York.

Oct. 30, 1978.

Bobrow, Greenapple, Burton, Distler & Midler, New York City, for plaintiff; J. Anthony Burton, New York City, of counsel.

Dechert, Price & Rhoads, Philadelphia, Pa., for defendant Ebeling & Reuss Co.; Harvey Bartle, III, Arthur H. Rainey, Philadelphia, Pa., of counsel.

McGarry & Waters, Grand Rapids, Mich., for defendant River Shore Productions, Inc.; John A. Waters, Grand Rapids, Mich., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Joneil Fifth Avenue Ltd. ("Joneil"), a retail store dealing in collectibles and fine giftware, commenced this action against defendants Ebeling & Reuss Co. ("Ebeling"), a wholesale distributor of collectibles and giftware, and River Shore Productions, Inc. ("River Shore"), a producer of museum quality limited editions of original works of art.[1] Plaintiff seeks damages from Ebeling for alleged breach of contract to sell it porcelain animal figures, specific performance directing Ebeling to provide the figures to plaintiff, and damages against River Shore for alleged interference with the contractual relations between Ebeling and Joneil. Plaintiff moves for a preliminary injunction to restrain Ebeling from disposing of the porcelain figures in its possession or control, in order to assure specific performance of its alleged contract with Ebeling.

In or about January 1978, River Shore announced the prospective distribution of a series of sixteen porcelain sculptures of baby animals (the "Baby Animal Collection") created by Roger Brown. Each animal in the collection would be manufactured in a limited edition of 15,000 units, to be issued sequentially over a period of about two years and to be distributed exclusively by Ebeling. In early 1978 Ebeling began taking orders for the first animal in the Collection, "Akiku the Seal Pup" (the "seal"). On March 31 and April 4, 1978, Joseph Mansour, purchasing agent for Joneil, placed three separate telephone orders for 200 seals apiece with Joseph Molloy, a salesman for Ebeling. Each of the orders was confirmed by an Ebeling order form which contained Molloy's handwritten name, the name of plaintiff as the buyer, the type and quantity of the goods to be sold, and three boldface statements printed at the bottom:

DELIVERY OF MERCHANDISE BASED ON AVAILABILITY.

ALLOCATION OF HUMMEL'S AND OTHER MERCHANDISE AMONG CUSTOMERS MAY BE NECESSARY.

IMPORTANT: PLEASE READ CONDITIONS ON REVERSE SIDE

The first order form also contained a handwritten note from Molloy estimating delivery in late May, and Mansour alleges that the same estimate of delivery was made orally for the two later orders. According to trade custom and usage, Joneil's confirmed orders for 600 seals gave it the option to order 600 of each animal subsequently produced in the Baby Animal Collection.

In July 1978 Ebeling advised Joneil, as well as other purchasers, that because of a computer malfunction it had accepted orders for more than 15,000 seals and, consequently, that it could not completely satisfy all the orders for seals that had been placed, including plaintiff's order. Ebeling offered to deliver to Joneil 300 seals. But upon the failure of the parties to reach an agreement for substitute performance, Ebeling announced that it would not sell Joneil any of the units it had ordered. Ebeling then dis-

---

1. Jurisdiction is grounded on diversity of citizenship, see 28 U.S.C. § 1332.

posed of all but fifty seals to its other customers. It has subsequently begun to ship the second and third animals in the Collection ("Alfred the Raccoon" and "Fanny the Fawn," respectively) to customers who received the seals and exercised their option to the new animals. It expects to complete such shipments by December.

Plaintiff asserts three causes of action against Ebeling. First, it contends that Ebeling's failure to deliver any of the 600 seals constitutes a breach of contract, and plaintiff asks for damages of $75,000, the estimated market value of the 600 seals. Second, plaintiff sues for anticipatory breach of the implied option to purchase 600 units of each of the subsequent fifteen sculptures that, together with the seals, will constitute the entire Baby Animal Collection, and seeks damages of $8,800,000. Finally, as an alternative cause of action, based upon allegations that the damages Joneil has sustained and will sustain are speculative or difficult to prove and that a recovery could be so large as to be beyond the capacity of Ebeling to satisfy a judgment, Joneil seeks specific performance of Ebeling's obligation to supply Joneil the 600 seals and to offer to Joneil the right to purchase 600 units of each of the fifteen other sculptures of the Baby Animal Collection.

█ Plaintiff now moves for a preliminary injunction because, it asserts, the seals, raccoons, fawns, and any other animal of the series that is already designed and in production will soon be sold or transferred to other customers of Ebeling, all or most of whom are plaintiff's competitors, and because the injunction is needed to preserve the status quo in the event that plaintiff is successful in its claim for specific performance of the contracts. Joneil is entitled to a preliminary injunction only upon "a clear showing of either (1) probable success on the merits *and* possible irreparable injury,

*or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief." [2]

## I

To prevail on the merits, Joneil must show that Ebeling breached an enforceable contract to sell Joneil the seals and other animals and that specific performance is an appropriate remedy for the breach. Ebeling, on the other hand, raises three substantial challenges to Joneil's legal claim: first, there is no enforceable contract between the parties; second, even if there were a contract, Ebeling has not breached it, since its nonperformance is excusable on grounds of the failure of an essential contractual condition; finally, even if Ebeling has breached an enforceable contract, the equitable remedy of specific performance is not appropriate in this case. Based on New York's version of the Uniform Commercial Code ("U.C.C.") and relevant case law, plaintiff's likelihood of success is not as clear as it asserts, but the case does present sufficiently serious questions going to the merits to make them a fair ground for litigation.

█ Joneil argues that the written order forms confirming the sale of 600 seals constitute a contract binding upon Ebeling, while the latter contends that the forms do not satisfy the Statute of Frauds or New York's requirement of mutuality of consideration. The three forms endorsed by Molloy, together with Ebeling's computer printouts and the correspondence between the parties, may be sufficient to satisfy the U.C.C.'s Statute of Frauds, since the documents afford "a basis for believing that the offered oral evidence rests on a real transaction." [3] Moreover, the defendant does

2. *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973); *see Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438 (2d Cir. 1977), *aff'g*, 416 F.Supp. 564 (S.D.N.Y.1976); *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir.), *cert.*

*denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

3. U.C.C. § 2–201, Comment 1. The Code requires that there be "some writing sufficient to indicate that a contract for sale has been made

not dispute the assertion that its customers who actually received the first animal will have the option to purchase an equal number of the subsequent animals. It does, however, point out that the option is "one way": a buyer may purchase the later animals but is not obligated to do so. Accordingly, Ebeling denies that the option is a binding agreement supported by mutual consideration. The New York rule is that "[u]nless the agreement or contract requires performance by each party . . . the agreement is unenforceable for lack of consideration."[4] The evidence now before the Court is insufficient to establish consideration for the option;[5] thus Joneil still has a heavy burden to prove that an enforceable contract existed for the sale of subsequent animals in the Collection.

Ebeling also asserts that even if a binding contract is found to exist, it has not breached the agreement. It raises a substantial issue in its claim that its performance was expressly conditioned upon the "availability" of the seals. This argument is supported by the conspicuous notice "DELIVERY OF MERCHANDISE BASED ON AVAILABILITY" printed on each of the three order forms. To be sure, plaintiff presents a counterargument that trade practice and custom do not regard this as a condition precedent,[6] but this merely emphasizes the existence of a sharply controverted issue of fact.

▮ A third major question posed by defendant is whether specific performance is a proper remedy in this case. Joneil appears to have established a prima facie right to specific performance of its contract for "unique goods" (the seals).[7] But Ebeling asserts that it has in its possession only fifty seals and, according to its unrebutted allegations, cannot obtain more seals without violating the rights of its good faith purchasers to seals of a limited edition. The rule is that "[s]pecific enforcement will not be decreed if the performance sought is impossible . . . or is in violation of the rights of a third person which are superior to those of the plaintiff."[8] In such cases, plaintiff's avenue for relief lies in an action for damages, not specific performance,[9] and Joneil has not shown the Court

---

between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker." *Id.* § 2–201(1). Defendant contends that there is no "signed" contract, but the Code's requirement of a signed writing can be satisfied by "any symbol executed or adopted by a party with present intention to authenticate a writing." *Id.* § 1–201(39). "[A] complete signature is not necessary," and "[a]uthentication may be printed, stamped or written . . . on any part of the document and in appropriate cases may be found in a billhead or letterhead." *Id.* § 1–201, Comment 39. *See also Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953) (parol evidence and related documents may be used to satisfy Statute of Frauds).

4. *Gutman v. Sal-Vio Masons, Inc.*, 72 Misc.2d 729, 731, 339 N.Y.S.2d 562, 565 (Sup.Ct.1972); *see Nassau Supply Co. v. Ice Serv. Co.*, 252 N.Y. 277, 169 N.E. 383 (1929); *Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 N.Y. 459, 462, 132 N.E. 148, 149 (1921) ("Unless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound."); *Souveran Fabrics Corp. v. Virginia Fibre Corp.*, 37 A.D.2d 925, 325 N.Y.S.2d 973 (1971).

5. *Cf.* U.C.C. § 2–306, Comment 2 (no problem with lack of mutuality where buyer is under good faith obligation to purchase from seller); *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917) (Cardozo, J.) (mutuality exists where whole writing is "instinct with an obligation").

6. *See generally* U.C.C. § 2–202; *Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 110 N.E.2d 551 (1953); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 93 (S.D.N.Y.1974) ("Conditions are not favored, and, in the absence of unambiguous language, will not be found by the Court."); *cf.* Note, *Fairness, Flexibility, and the Waiver of Remedial Rights by Contract*, 87 Yale L.J. 1057, 1071–79 (1978) (no waiver of contract rights recognized by courts unless bargained for by parties).

7. U.C.C. § 2–716(1) ("Specific performance may be decreed where the goods are unique or in other proper circumstances."); *see id.*, Comment 2 & N.Y.Annots.; *Copylease Corp. of America v. Memorex Corp.*, 408 F.Supp. 758 (S.D.N.Y.1976) (analogous California law).

8. Restatement of Contracts § 368.

9. For cases involving the impossibility of specific performance in contracts for the sale of land that had been conveyed to third party

any special circumstances that would justify penalizing good faith purchasers in order to grant specific performance.[10]

## II

It is far from clear that Joneil will eventually succeed on the merits, but it has made out a substantial case that is a fair ground for litigation. There are unresolved questions of fact that may ultimately, and after opportunity for discovery, entitle it to relief.[11] In such cases, a preliminary injunction may be issued where the balance of equities tips decidedly in favor of plaintiff.[12] In making this determination, the Court must weigh the harm to plaintiff if the preliminary injunction is not granted against the harm that will accrue to defendants and third parties if it is.

To begin with, the major part of Joneil's business injury has already been sustained, since all but fifty of the seals have been distributed to other buyers. This not only undercuts plaintiff's strongest argument on the merits of its request for specific performance, but also undermines its contention that specific performance is necessary because damages will be impossible to calculate due to Joneil's intention "to withhold the bulk of its order from sale, so as to have full sets for sale when the series was complete." Plaintiff argues that it will

also be irreparably injured if the raccoons and fawns, like the seals, are allowed to slip away to other purchasers, because those items will rapidly appreciate in value, as further baby animals are manufactured and sold, so that damages will be impossible to estimate and will not adequately reflect the lucrative profits plaintiff could make if its rights to these animals are specifically enforced. On the other hand, in appropriate cases of contract breach, New York law will grant lost profits in its computation of damages.[13] Nor should these profits be impossible of estimation. Indeed, Joneil's complaint in this action had no difficulty in setting the market value of the seals and other animals and, then, in calculating lost profits. Its total damage claim of $8,864,-750 would appear to be an adequate, in fact generous, remedy at law.

Plaintiff's failure to establish irreparable injury must weigh heavily against it in its petition for a preliminary injunction.[14] Moreover, whatever injuries Joneil will suffer if the temporary relief is denied appear to be more than counterbalanced by the significant inconvenience and disruption of business operations of defendants and third parties that would result if the Court grants the injunction. In addition, if the Court were to restrain defendant from disposing of animals already committed to oth-

---

good faith purchasers, see *Saperstein v. Mechanics & Farmers Savings Bank of Albany,* 228 N.Y. 257, 260, 126 N.E. 708 (1920); *Paolucci v. Damini,* 55 A.D.2d 820, 390 N.Y.S.2d 295 (1976); *Maurer v. Albany Sand & Supply Co.,* 40 A.D.2d 883, 337 N.Y.S.2d 44 (1972).

10. *Cf.* U.C.C. § 2–615(b) & Comments 5, 11 (where seller unable to perform contractual duties because of impracticability, it must fairly allocate performance among various customers).

11. *See* notes 5, 6 & 10 *supra.*

12. *See Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953). *Compare Jacobson & Co. v. Armstrong Cork Co.,* 416 F.Supp. 564 (S.D.N.Y.1976), *aff'd,* 548 F.2d 438 (2d Cir. 1977) (granting injunction despite lack of probable success on merits) *with Cohen v. Price Comm'n,* 337 F.Supp. 1236 (S.D.N.Y. 1972) (denying preliminary injunction because neither probability of success on merits nor

balance of hardships tipping decidedly in favor of plaintiff).

13. U.C.C. §§ 2–713, –715; *Randall-Smith, Inc. v. 43rd St. Estates Corp.,* 17 N.Y.2d 99, 105–06, 268 N.Y.S.2d 306, 312, 215 N.E.2d 494, 498 (1966); *Mignon v. Tuller Fabrics Corp.,* 1 A.D.2d 174, 148 N.Y.S.2d 605 (1956); *Harbor Hill Lithographing Corp. v. Dittler Bros., Inc.,* 76 Misc.2d 145, 348 N.Y.S.2d 920 (Sup.Ct. 1973); *Western Geophysical Co. of America v. Bolt Assocs., Inc.,* 584 F.2d 1164 (2d Cir. 1978); *Muraka v. Bachrack Bros., Inc.,* 215 F.2d 547 (2d Cir. 1954) (Harlan, J.); *For Children, Inc. v. Graphics Int'l, Inc.,* 352 F.Supp. 1280, 1284 (S.D.N.Y.1972).

14. *See New York Pathological & X–Ray Laboratories, Inc. v. INS,* 523 F.2d 79, 81 (2d Cir. 1975); Mulligan, *Foreword: Preliminary Injunction in the Second Circuit,* 43 Brooklyn L.Rev. 831 (1977).

**1202**

er customers, defendant's good will would be impaired, and it would be exposed to lawsuits by numerous customers throughout the country. Thus the total harm incurred by defendant and third parties appears much more significant than that which will be suffered by the single company, Joneil, if the preliminary injunction is denied.

While the Court finds that there are serious issues that merit further factual development, plaintiff has failed to demonstrate that the balance of hardships tips decidedly in its favor. Accordingly, the Court denies the motion for preliminary injunction.