**DAVID TUNICK, INC., Plaintiff,**

v.

**E.W. KORNFELD and Galerie Kornfeld Und Cie, Defendants,**

v.

**David TUNICK, Counterclaim Defendant.**

**No. 91 Civ. 7027 (DNE).**

United States District Court,
S.D. New York.

Dec. 8, 1993.

---

Walter, Conston, Alexander & Green, P.C., New York City (William M. Barron, Kieran P. Broderick, of counsel), for plaintiff and counterclaim defendant.

Shearman & Sterling, New York City (Jeremy G. Epstein, Jerome S. Fortinsky, Karen S. Hart, of counsel), for defendants.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This action arises from Mr. E. W. Kornfeld's and Galerie Kornfeld und Cie's (collectively "Kornfeld" or "defendants") sale of a signed Picasso print to plaintiff, David Tunick, Inc. Plaintiff alleges that defendants sold David Tunick, Inc. a print entitled Le Minotauromachie (the "Print") which defendants represented was signed by Pablo Picasso (the "Signature") but which, in fact, bears a forged signature. As a result, plaintiff brought this action alleging breach of warranties, fraud, reckless misrepresentation, breach of the duty of honesty and fair dealing, and breach of fiduciary duty. Defendants deny plaintiff's allegations, contend that the Signature is genuine, and have filed counterclaims against plaintiff, David Tunick, Inc., and counterclaim defendant, David Tunick (collectively "Tunick" or "plaintiff"). Defendants' counterclaims allege breach of contract, unjust enrichment, and fraud. In the instant motion, defendants seek summary judgment on each of plaintiff's five claims for relief and on defendants' first counterclaim, which alleges breach of contract.

## DISCUSSION

It is well settled that a court should grant a motion for summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact. See Cable Science Corp. v. Rochdale Village, Inc., 920 F.2d 147, 151 (2d Cir.1990); see also United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Owens v. New York City Hous. Auth., 934 F.2d 405, 408 (2d Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991). An issue is genuine and material for purposes of summary judgment if the evidence before the court presents a sufficient disagreement to require submission to a jury and is not so one-sided that a party must prevail as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). A "court may grant summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A primary purpose of summary judgment is to isolate and eliminate factually unsupported claims or defenses. See id. at 323–24, 106 S.Ct. at 2552–53. As the Supreme Court has emphasized, "[s]ummary judgment procedure

is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1).

Conclusory allegations are insufficient to defeat a motion for summary judgment. *See Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Francis v. Coughlin,* 891 F.2d 43, 47 (2d Cir.1989). Rather, to defeat a motion for summary judgment, a plaintiff must offer " 'concrete evidence from which a reasonable juror could return a verdict in his favor.' " *Cinema N. Corp. v. Plaza at Latham Assocs.,* 867 F.2d 135, 138 (2d Cir.1989) (quoting *Dister v. Continental Group, Inc.,* 859 F.2d 1108 (2d Cir.1988)); *see Grant Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992).

### 1. Defendants' Motion for Summary Judgment on Plaintiff's First Claim for Relief

Defendants seek summary judgment on plaintiff's first claim for relief. Plaintiff's first claim for relief alleges that "Defendants have breached their express warranties to plaintiff (a) that the [signature on the Print] is authentic and (b) that the [Print] had been signed in 1942 and had gone directly from Picasso to a private collector whose widow consigned it to Defendants for sale at the action." Defendants contend that plaintiff is unable to demonstrate that the Signature is not genuine. Further, defendants contend that, even if the Signature is not authentic, plaintiff's refusal to accept a replacement print of Le Minotauromachie, that also was allegedly signed by Pablo Picasso, defeats plaintiff's ability to recover for breach of warranty.

Defendants' first contention is easily disposed of and, in fact, defendants in their reply memorandum concede that, for the purpose of this motion, the authenticity of the Signature is in dispute. *See Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment* ("Defen-dants' Reply Memorandum"), at 7–8. Plaintiff, subsequent to the filing of defendants' motion for summary judgment, has identified a forensic document examiner, William J. Flynn, willing to testify that the Signature is a forgery. *See Declaration of William J. Flynn,* at 2 (dated, October 20, 1993). While the late date at which this expert was identified may appear odd in light of plaintiff's assertion in its complaint that "[p]rior to the commencement of the present suit [in 1991], Plaintiff learned that numerous experts are of the opinion that the Signature [on the Print] is false," plaintiff has submitted sufficient evidence to place the authenticity of the Signature in dispute. Hence, summary judgment on this basis is not appropriate.

■ Defendants' second contention, that even if the Signature is not authentic, plaintiff's refusal to accept a replacement print of Le Minotauromachie defeats plaintiff's ability to recover for breach of warranty, appears to raise an issue of first impression. Plaintiff claims that, immediately upon learning that the Signature was forged, it demanded rescission of the sale and tendered the Print to defendants.[1] Plaintiff thus revoked acceptance of the Print in accordance with Section 2–608 of the Uniform Commercial Code as enacted in New York ("N.Y.U.C.C."). Under the N.Y.U.C.C., a purchaser who in good faith revokes his acceptance of goods, has the same rights and duties with regard to the goods involved as if he had rejected them. *See* N.Y.U.C.C. § 2–608(3). One duty imposed upon the buyer pursuant to N.Y.U.C.C. Section 2–508 is that:

(1) Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(2) Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably

---

1. For the purpose of evaluating this motion, the Court will assume, without finding, that plaintiff demanded recision in a timely fashion and tendered the Print to defendants.

notifies the buyer have a further reasonable time to substitute a conforming tender.

N.Y.U.C.C. § 2–508.

Defendants allege, and plaintiff does not contest, that shortly after Mr. Tunick informed Mr. Kornfeld that he believed the Signature to be a forgery, Mr. Kornfeld offered to exchange the Print for another print of Le Minotauromachie which also was allegedly signed by Pablo Picasso. Defendants contend that, in so doing, defendants exercised their right under N.Y.U.C.C. Section 2–508(2) to substitute conforming goods for the allegedly non-conforming tender rejected by plaintiff. Plaintiff rejected defendants' offer to replace the Print with another print of Le Minotauromachie and filed suit in this Court. Defendants aver that, because Mr. Kornfeld's offer met the standards of N.Y.U.C.C. Section 2–508, plaintiff could not properly reject the offer and look to alternative remedies. Plaintiff disputes the applicability of N.Y.U.C.C. Section 2–508 to prints. Plaintiff avers that:

> In the world of fine art, however, there can be no legally meaningful doctrine of functional equivalence or substitution.... Prints vary, sometimes widely, in many ways and no two are the same. Purchasers obviously buy prints for different reasons.... Their choice of one print over another will be motivated by objective reasons, subjective reasons, whim, fancy and impulse.

*Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment* ("Plaintiff's Memorandum"), at 19.

Defendants' argument is novel. No court in this Circuit or in New York appears to have been presented with the question of whether a non-conforming tender of a work of art may be cured by an offer of a different but similar work. Furthermore, the legislative history of the relevant Uniform Commercial Code section is of no aid in answering this question. Indeed, this issue requires consideration of whether prints are substitutable for one another: Are two prints, printed from the same plates and by the same artist, sufficiently similar that one can be said to be a perfect substitute for another? Moreover, is any such similarity sufficient to burden a good faith purchaser of a print with the duty to accept, as fulfillment of a contract to purchase that print, another print that the purchaser did not view or bid upon?

After carefully considering this issue, I find that two prints, by the same artist and from the same plates, are not interchangeable. As such, N.Y.U.C.C. Section 2–508 does not, as a matter of law, obligate a buyer to accept in lieu of a non-conforming print, a substitute print from the same series of prints.

First, two prints from a series produced by an artist each possess distinctive qualities that may impact their aesthetic and economic value. Often, differences in the quality of impressions are observable as the plate used to make the prints wears during the course of printing. *See* Lee Rosenbaum, *The Complete Guide to Collecting Art* 134 (1982) (discussing potential for the "falling off in quality from the first to last" impression from a plate); Irwin W. Solomon, *How to Start and Build an Art Collection* 14 (1961) (As a print plate wears over time, later prints may become "fuzzy, lacking the fine definition and brilliant contrast of a superior print."). In addition, the price of a given print may be inflated by "some 'autograph' quality or quality of impression" not shared by other prints in the same series. Guy R. Williams, *Collecting Pictures* 86 (1968). Similarly, depending on the type of printing method used, coloration and contrast may vary among prints in a series. Each of these factors can substantially impact the value of a given print.

Second, prints, like other types of artwork, are fragile and their value can be diminished by the manner in which they are treated over time. Prints that are improperly stored easily can become damaged, fade or blur. *See Christie's Guide to Collecting* 110–11 (Robert Cumming ed., Prentice–Hall 1984). Any such occurrence substantially impacts the economic value of the print. *See id.* As one would expect, "[t]he first factor [considered by collectors] is the general condition of the print.... Ideally, every print ... purchase[d] should look as nearly as possible as if it has just come straight from the press."

Guy R. Williams, *Collecting Pictures* 102 (1968).[2]

Third, prints, unlike petroleum or produce, are not purchased for strictly utilitarian reasons. A print is selected by a purchaser because the traits of that print please the purchaser's aesthetic sensibilities. Thus, whether prints in a series are largely similar or slightly different is of no critical importance. The real fact to be considered is that the purchaser chose a given print because *he* viewed it as uniquely beautiful, interesting, or well suited to his collection or gallery. Nothing else will satisfy that collector but that which he bought. For these reasons, prints are not interchangeable.

Thus, each print is, by definition, unique. Hence, there can be no exact substitute for a given print purchased by a collector. In the case at bar, plaintiff did not enter into a contract to purchase *a* print of Le Minotauromachie signed by Picasso; rather, plaintiff bid for and purchased *the specific* print of Le Minotauromachie that Mr. Tunick viewed prior to the auction, which was signed by Picasso and in the condition Mr. Tunick observed at the time of purchase. In this context it would be fundamentally unfair, and unsound policy, to impose on plaintiff a duty to accept another—inherently different— print of Le Minotauromachie as a substitute for the one plaintiff actually viewed, bid for, and purchased.

A review of N.Y.U.C.C. Section 2–716 further demonstrates that New York courts would find that prints are intrinsically unique, rather than fungible or perfect substitutes for one another. N.Y.U.C.C. Section 2–716(1) provides that "Specific performance may be decreed where the goods are unique or in other proper circumstances." Official Comment 2 to N.Y.U.C.C. Section 2–716 indicates that specific performance historically has been available in connection with "contracts for the sale of ... priceless works of art." Indeed, New York courts long have recognized the availability of the remedy of specific performance on facts analogous to those in this case. *See, e.g., Chabert v. Robert & Co.,* 273 A.D. 237, 76 N.Y.S.2d 400, 402 (1st Dep't 1948) (discussing specific performance generally and in the context of photographic prints); *see also Joneil Fifth Ave. Ltd. v. Ebeling & Reuss Co.,* 458 F.Supp. 1197, 1200 (S.D.N.Y.1978). Accordingly, the trend in New York seems to be toward courts finding that prints are unique goods.

■ Because prints are unique—both as a result of differences in impression quality and condition—N.Y.U.C.C. Section 2–508 is not applicable to prints. Even if a seller offers to substitute a print from a series from which a non-conforming tender was drawn, the buyer is not obligated to accept as a substitute the print that he did not view, bid upon, or purchase. Provided a buyer purchases a specific print, it is *that* print for which he has bargained. Unlike petroleum or other fungible goods, prints are inherently unique and are purchased for their aesthetic qualities and investment value. Such value is dictated by those attributes common only to the specific print purchased. Hence, N.Y.U.C.C. Section 2–508 does not provide defendants with a defense to plaintiff's first cause of action. Summary judgment on this claim must therefore be denied.

*2. Defendants' Motion for Summary Judgment on Plaintiff's Second and Third Claims for Relief*

■ Plaintiff's second claim for relief sounds in fraud. Plaintiff alleges that, at the time Kornfeld sold the Print to plaintiff, defendants knew that the Signature was not authentic and that the representations made to plaintiff regarding the provenance of the Print were false. Alternatively, in the third claim for relief, plaintiff alleges that defendants recklessly misrepresented facts concerning the Signature and the Print's provenance. In each claim, plaintiff contends that it justifiably relied, to its detriment, on defendants' representations and assurances.

Defendants aver that summary judgment should be granted on each of these claims

---

**2.** The print at the center of this litigation is more than forty years old and has been under the ownership or control of at least two other persons. In addition, the print offered to plaintiff as a substitute is of the same age and also has passed through several hands. Thus, the condition of these prints clearly impacts their value and distinguishes one from the other.

because plaintiff is unable to establish that defendant acted with wrongful intent or utter disregard for the truth of their assertions in making representations concerning the Signature and provenance of the Print. Further, defendants claim entitlement to summary judgment because Mr. Kornfeld investigated the authenticity of the Signature and provenance of the Print. Defendants argue that, prior to the sale of the Print to Tunick, Mr. Kornfeld submitted the Print to Ms. Brigitte Baer for review (Kornfeld Tr.,[3] at 51–61), and reviewed a catalogue raisonné of Picasso prints ("Catalogue Raisonné") prepared by Ms. Baer, both of which indicated that the Signature was genuine.

Plaintiff alleges, however, that, at the time of defendants' alleged investigation, Ms. Baer was employed by defendants. This is disputed, and the veracity of this contention is unclear in the record. In addition, the Catalogue Raisonné purportedly consulted by Mr. Kornfeld was published by defendants. (Kornfeld Tr., at 163–65). Furthermore, Mr. Kornfeld's deposition testimony indicates he was aware that another print of Le Minotauromachie, bearing a signature similar to that on the Print, has an annotation on the front of the print that was not written by Picasso or his printer, who Mr. Kornfeld knew were the only ones that properly could have written such an annotation. (Kornfeld Tr., at 28–29, 148–49, 157–58). From these and other facts, plaintiff argues that defendants either knew or should have known that the Signature was forged.

While certain evidence submitted by defendants certainly seems to undermine plaintiff's second and third claims for relief, plaintiff has made a sufficient showing to place into question triable issues concerning Mr. Kornfeld's state of mind and defendants' intent at the time the Print was sold to plaintiff. On the record before the Court, disputed issues of material fact exist concerning whether the Signature is genuine, the provenance of the Print was accurately represented, and, if the Signature is not genuine or the provenance was inaccurately described, whether defen-

dants acted recklessly or with scienter in making any inaccurate representations. These are issues for the jury.

### 3. Defendants' Motion for Summary Judgment on Plaintiff's Fourth Claim for Relief

Plaintiff's fourth claim for relief alleges that defendants breached their duties of "fair dealing, candor and honor" in connection with the sale of the Print to plaintiff. Defendants move for summary judgment on this claim because, they argue, plaintiff cannot sustain its burden with respect to the breach of warranty, fraud, or reckless misrepresentation claims. Hence, defendants contend, plaintiff is unable to sustain its burden of proof with respect to the fourth claim for relief.

As previously discussed, the merits of plaintiff's first, second, and third claims for relief must be evaluated by the trier of fact. A finding in favor of plaintiff on any of these claims would permit a reasonable jury also to find in favor of plaintiff on the fourth claim for relief. If, for example, the jury ultimately finds in favor of plaintiff on the fraud claim, the jury might find that defendants breached their duty of honesty and fair dealing under N.Y.U.C.C. Section 1–203. Summary judgment on this claim must therefore be denied.

### 4. Defendants' Motion for Summary Judgment on Plaintiff's Fifth Claim for Relief

In the fifth claim for relief, plaintiff alleges that defendants breached their fiduciary duty to plaintiff in connection with an alleged joint venture agreement entered into by the parties to this action (the "Joint Venture Claim"). Specifically, plaintiff alleges that "Subsequent to Plaintiff's aforesaid purchase of the [Print], Plaintiff and Defendants entered into a joint venture to resell the [Print]." Further, plaintiff alleges that "Upon information and belief, Defendants made statements to interested and prospective purchasers of the [Print] which detract-

---

**3.** "Kornfeld Tr." refers to the transcript of the deposition testimony of Mr. E.W. Kornfeld. Only those portions of this transcript submitted to the

Court by the parties have been considered in connection with this motion.

ed from the salability and/or sales value of the [Print] to such third parties, and engaged in other statements and actions violating Defendants' obligations to Plaintiff with respect thereto." In an earlier opinion, *David Tunick, Inc. v. Kornfeld,* 813 F.Supp. 988, 995 (S.D.N.Y.1993), this Court found summary judgment on the Joint Venture Claim inappropriate because discovery was incomplete and Tunick had not yet "had the opportunity to explore the factual underpinnings of this claim." Discovery is now complete, and Tunick has failed to submit to this Court any evidence demonstrating the existence of a joint venture, or otherwise supporting the Joint Venture Claim. Thus, summary judgment on this claim is appropriate.

Under New York law, a joint venture exists only if five elements are present. Specifically,

> to form a joint venture, (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. *All of these elements must be present before joint venture liability may be imposed.*

*Itel Int'l Containers Corp. v. Atlanttrafik Express Serv. Ltd.,* 909 F.2d 698, 701 (2d Cir.1990) (emphasis added) (citation omitted). Failure to prove any of the above-enumerated elements is fatal to an assertion of joint venture liability. *See id.; see also Orderline Wholesale Distribs., Inc. v. Gibbons, Green, van Amerongen, Ltd.,* 675 F.Supp. 122, 126 (S.D.N.Y.1987); *Precision Testing Labs. Ltd. v. Kenyon Corp.,* 644 F.Supp. 1327, 1348 (S.D.N.Y.1986). Plaintiff has failed to establish that the parties formed a joint venture. Indeed, plaintiff concedes this point. *See Plaintiff's Memorandum,* at 50 ("Defendants contend that the collaboration between Tun-

ick and Kornfeld did not take the form of a classically defined joint venture.... [T]his is probably true, particularly since discovery has shown that there was no agreement for joint control or sharing of losses....").

■ Mr. Tunick's deposition testimony clearly demonstrates that the parties did not enter into the joint venture alleged in plaintiff's Joint Venture Claim. For example, when asked when the joint venture agreement was entered into, Mr. Tunick responded that it was entered into "[o]ver the course of time." (Tunick Tr.,[4] at 755). This response negates the existence of a specific joint venture agreement between the parties of the type required under New York law. Moreover, when questioned as to defendants' contributions to the joint venture, Mr. Tunick responded that defendants contributed "confusion," but no money or property. (Tunick Tr., at 758). Hence, plaintiff has failed to show that defendants each made "a contribution of property, financing, skill, knowledge, or effort" as required by New York law. *Itel Containers Int'l Corp.,* 909 F.2d at 701. Similarly, Mr. Tunick testified that the parties did not discuss issues relating to joint control of the purported joint venture, (Tunick Tr., at 759–60), and that "[t]o the best of [his] remembrance, there was never any discussion of [sharing] losses," (Tunick Tr., at 758–59). Thus, Mr. Tunick's own testimony belies the existence of the joint venture alleged in the fifth claim for relief.

In spite of this clear record, plaintiff still contends that, even if the parties did not enter into a joint venture, "it does not follow that the absence of a joint venture negates the existence of the fiduciary duties which Kornfeld owed to Tunick and is alleged to have breached." *Plaintiff's Memorandum,* at 50. Plaintiff now claims that a principal-agent relationship existed between Kornfeld and Tunick, thus obligating Kornfeld to fulfill their duties to Tunick, as Tunick's agent, with the utmost of good faith. *See Plaintiff's Memorandum,* at 49.[5]

---

4. "Tunick Tr." refers to the transcript of the deposition testimony of Mr. David Tunick. Only those portions of this transcript submitted to the Court by the parties have been considered in connection with this motion.

5. On December 8, 1993, this Court received a letter from William M. Barron, counsel to plaintiff and counterclaim defendant, belatedly informing this Court that "plaintiff will not pursue its Fifth Claim for Relief (Breach of Fiduciary

Plaintiff's eleventh-hour attempt to restyle the Joint Venture Claim in terms of agency law misses the mark. As an initial matter, the record is devoid of evidence supporting plaintiff's agency claim.[6] Moreover, plaintiff has failed to submit any evidence, or indicate any deposition testimony by Mr. Kornfeld, Mr. Tunick or any other witness, that in any way supports this new claim. It is well settled that a mere conclusory allegation of the type put forth in plaintiff's answering memorandum is wholly insufficient to defeat summary judgment. *See Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Francis,* 891 F.2d at 47. To defeat a motion for summary judgment, a plaintiff must offer concrete evidence from which a reasonable juror could find in his or her favor. *See Cinema N. Corp.,* 867 F.2d at 138.

Defendants have shown that plaintiff cannot demonstrate that a joint venture existed, and plaintiff has failed to rebut this showing. Further, plaintiff has wholly failed to offer concrete evidence in support of its fifth claim for relief. Accordingly, summary judgment must be granted on this claim.

### 5. Defendants' Motion for Summary Judgment on the First Counterclaim

Defendants' first counterclaim alleges breach of contract. Defendants contend that Mr. Tunick, on behalf of himself or David Tunick, Inc., breached his agreement to pay Kornfeld for the Print. By way of defense, plaintiff claims, *inter alia,* that the Signature is a forgery, and the authenticity of the Signature was misrepresented at the time the Print was purchased. Further, plaintiff claims that it validly revoked its acceptance of the Print upon discovering that the Signature was forged. Plaintiff thus claims that Tunick is not legally obligated to pay Kornfeld for the Print. Finally, plaintiff argues that the first counterclaim is barred by defendants' unclean hands, fraud, and other culpable acts.

Because I have denied defendants' motion for summary judgment on plaintiff's first,

second, third, and fourth claims for relief, summary judgment on defendants' first counterclaim is not appropriate. Disputed issues of fact regarding defendants' first counterclaim exist, the most important of which concerns whether or not the Signature is authentic. These issues, and whether defendants are entitled to judgment on their first counterclaim, must be decided by the trier of fact. Accordingly, summary judgment on defendants' first counterclaim is denied.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment on plaintiff's first, second, third, and fourth claims for relief is DENIED. In addition, defendants' motion for summary judgment on their first counterclaim is DENIED. Summary judgment is GRANTED in favor of defendants on plaintiff's fifth claim for relief. The Clerk of the Court is directed to unseal the briefs, exhibits and any other materials filed in connection with this motion.

SO ORDERED.

Duty) at trial." *Letter of William M. Barron to the Court* (dated Dec. 7, 1993) (on file with the Southern District of New York).

6. It should also be noted that plaintiff's Second Amended Complaint, and the predecessors thereto, does not allege that defendants acted as plaintiff's agent.